**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.                                  No. 99-2186

TERRANCE DEWAYNE HECKARD,

     Defendant-Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-98-513-MV)**

_____

Todd B. Hotchkiss of Frechette & Associates, P.C., Albuquerque, New Mexico,
for Defendant-Appellant.

Sarah Y. Vogel, Assistant U.S. Attorney (Norman C. Bay, United States Attorney
for the District of New Mexico, with her on the brief), Las Cruces, New Mexico,
for Plaintiff-Appellee.

_____

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

_____

**McKAY** , Circuit Judge.

_____

     Defendant Terrance Heckard appeals his conviction on three counts. Count

I charged conspiracy to possess with intent to distribute 500 grams or more of

cocaine in violation of 21 U.S.C. § 846. Count II charged possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. Count III charged felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 2. He was sentenced to 168 months of incarceration plus five years of supervised release. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## I. Background

Defendant was one of dozens of individuals targeted in a three-year investigation into cocaine trafficking in Hobbs, New Mexico. On August 6, 1997, he sold a small quantity of cocaine to an undercover agent. Authorities discovered that his cocaine was transported by Texan Richard Baeza to New Mexico residents Mark Sanders and Andrew Pompey, using one Anthony Flores as a courier. Once Sanders received shipments, he sold smaller quantities to Defendant for resale on the street. Flores came to know Defendant because he had seen Defendant with Sanders at Defendant's house on several occasions, and knew that he was one of Sanders' distributors. Sanders left a scale used for weighing drugs at Defendant's house, and he even lent him a Colt .357 revolver.

On September 29, 1997, Flores was transporting a large quantity of cocaine to Sanders, but was unable to locate him. Nervous at the thought of holding onto that much cocaine himself, Flores went to Defendant's house. He told Defendant

that he had a kilogram of cocaine, and he asked if Defendant could keep it safe until Sanders could be located. Defendant took the cocaine and hid it in the back room of the house, then went with Flores to find Sanders. When Defendant found Sanders, he told him that he was holding the cocaine for him at his house. Later, Pompey was upset with Flores for letting Defendant keep the cocaine at his house, but all convened at Defendant's home and nothing more was said.

At 6:00 a.m. on October 23, 1997, law enforcement officers executed search and arrest warrants at Defendant's home. After knocking, they forcibly entered, finding Defendant awake and standing within a few feet of the Colt .357. Other individuals were in the home and asleep. Agents seized the gun, scale, and documents indicating Defendant's ownership of the home.

Sanders and Flores agreed to testify against Defendant. Aware of Flores' potentially damaging testimony in court, Defendant approached Flores in prison with a prepared affidavit for Flores to sign. The affidavit stated that Flores had no knowledge of any illegal activity conducted by Defendant. Fearing for himself and his family, Flores signed the affidavit. After some hesitation, Flores still testified against Defendant. Neither the threats nor the affidavit were introduced into evidence, except that Defendant's counsel on cross examination questioned Flores' initial hesitance to testify.

At trial, the government played nine recorded telephone conversations from

wire intercepts it had used. Sanders and Flores identified the voices on tape and verified the accuracy of the conversations, and the court was satisfied that they qualified for admission under Federal Rule of Evidence 801(d)(2)(E). After a rule 403 objection was withdrawn, the tapes were admitted without objection. The conversations discussed the September 29th transport of cocaine in which Flores had left a large amount at Defendant's home.

Before instructing the jury, the court provided copies of the Proposed Instructions to each party and asked for objections. Neither Defendant nor the government objected. The Instructions included a comprehensive instruction on the elements of conspiracy, taken in its entirety from 1997 Fifth Circuit Pattern Instruction 2.89. Defendant requested that Count III, felony firearm possession, be severed from Counts I and II, but that request was denied. The jury convicted Defendant on all three counts.

At sentencing, Defendant received a two-level enhancement for obstructing justice pursuant to United States Sentencing Guidelines (U.S.S.G.) § 3C1.1 because of his jailhouse contact with Flores. He also received an enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). Finally, the court refused to reduce Defendant's sentence for minor or minimal role in the conspiracy under U.S.S.G. §3 B1.2. The court determined for Counts I and II that Defendant had possessed 1028.62 grams of cocaine. Defendant was sentenced to

168 months of incarceration, followed by five years of supervised release.  This timely appeal followed.

## II.  Sufficiency of the Evidence

Defendant claims that the evidence was insufficient to support conviction on any of the three counts against him.  A defendant's claim of insufficient evidence is reviewed de novo.    See United States v. Jackson   , 213 F.3d 1269, 1283 (10th Cir. 2000).  In order to conclude that the evidence was insufficient as a matter of law, we must view the evidence and reasonable inferences therefrom in the light most favorable to the government and then determine that no rational jury could have found Defendant guilty beyond a reasonable doubt.        See United States v. Jenkins   , 175 F.3d 1208, 1215 (10th Cir.)     cert. denied , 528 U.S. 913 (1999).

## A.  Felony Firearm Possession

Defendant first alleges that the evidence was insufficient to establish that he possessed the Colt revolver seized from his home on October 23, 1997.  To sustain a conviction under 18    U.S.C. § 922(g)(1), the government must prove a defendant:  (1) "was convicted of a crime punishable by imprisonment exceeding one year;" (2) "thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate or foreign commerce."        United States v. Adkins   , 196 F.3d 1112, 1117 (10th Cir. 1999).  Defendant challenges only the second element:

knowing possession. (Def.'s Br. at 59-60).

Constructive possession is sufficient for conviction under this statute. See United States v. Wilson, 107 F.3d 774, 779 (10th Cir. 1997). "In cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). Constructive possession requires a showing that a defendant knowingly holds the power to exercise dominion or control over the firearm. See Wilson, 107 F.3d at 779. Dominion or control are properly inferred from exclusive possession of the premises, but when there is evidence of joint occupancy, the government must offer "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon." Mills, 29 F.3d at 550 (quoting United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993), cert. denied, 510 U.S. 1198 (1994)).

The government demonstrated that Defendant was the owner of the residence where the revolver was found, that he was awake and near the gun at the house when the gun was discovered, and that he had received the gun no more than a few months prior to his arrest. It was certainly not irrational for the jury to conclude that Defendant knowingly held the power to exercise dominion and control over the revolver. Thus, Defendant's conviction for firearm possession

-6-

does not fail for want of evidence.

## B. Cocaine Possession

Defendant next asserts that the government introduced insufficient evidence to sustain his conviction for possession with intent to distribute cocaine under 21 U.S.C. § 841. Specifically, he claims that there was no proof that he knew the true nature of the contents of the bag he received from Flores on September 29, 1997. A conviction under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 requires proof that a defendant: "(1) possessed a controlled substance; (2) knew that he possessed a controlled substance; and (3) intended to distribute the controlled substance." United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999) (quoting Wilson, 107 F.3d at 778). Again, Defendant challenges only the second element: knowing possession. (Def.'s Br. at 67). Defendant's claim that there was no evidence of his knowledge is directly belied by the trial testimony of Flores and Sanders, who both testified that Defendant knew the substance in the bag was cocaine.

Flores testified that he expressly informed Defendant that the bag contained Sanders' cocaine before giving it to Defendant. In addition, Defendant immediately hid the bag in the back of his house and then left to find Sanders, further indicating his knowledge of the illicit nature of the bag's contents. When Defendant did locate Sanders, he explicitly told Sanders that he was holding a

kilogram of cocaine, and they went together to retrieve it. From this testimony, the jury could reasonably conclude that he knew there was cocaine in the bag, he possessed the cocaine, and he intended to redistribute it. See, e.g., United States v. Ivy, 83 F.3d 1266, 1287 (10th Cir.), cert. denied, 519 U.S. 901 (1996) (sustaining conviction for possession with intent to distribute crack cocaine based solely on informant testimony that the defendant was a dealer). Thus, the evidence was sufficient to support a conviction for cocaine possession under 21 U.S.C. § 841.

## C. Cocaine Conspiracy

Finally, Defendant challenges the sufficiency of the evidence for conspiracy to possess with intent to distribute cocaine. To prove a conspiracy in violation of 21 U.S.C. § 846, the evidence must establish: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997), cert. denied, 523 U.S. 1144 (1998). Defendant contends that the government failed to establish any of these elements, instead relying only on "inference upon inference." (Def.'s Br. at 65) (citing United States v. Anderson, 981 F.2d 1560, 1564 (10th Cir. 1992). He claims that the jury's guilty verdict on conspiracy was unreasonable, because keeping the cocaine on September 29,

1997, was not initially Defendant's idea, and because Pompey was later unhappy about it. ( Id. at 60-65).

The evidence at trial established that Defendant and Sanders repeatedly collaborated to distribute cocaine on the streets of Hobbs, with Sanders giving Defendant cocaine for resale. Sanders' testimony at trial was corroborated by the scale found at Defendant's apartment, by the August transaction, and by Flores' testimony. Defendant's safekeeping of the cocaine on September 29th may have broken the normal chain of distribution and upset Pompey; however, Defendant willingly assisted in preserving the acts of the conspiracy by conserving a substantial shipment of cocaine. The abnormality of this act certainly did not negate the substantial evidence pointing to Defendant as an active participant in the acquisition and distribution of the cocaine. Therefore, the first three elements of conspiracy were met. The jury was not irrational in concluding that Defendant had knowing and voluntary agreements with Sanders and Flores to violate the law by transporting and distributing cocaine, the "essential objective of the conspiracy." Carter , 130 F.3d at 1439.

In addition, interdependence among the coconspirators was adequately supported. "A defendant's activities are interdependent if they 'facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole.'" Ivy, 83 F.3d at 1286 (quoting United States v. Horn , 946 F.2d 738, 740-41(10th

Cir. 1991)). Evidence at trial showed that Defendant's actions as a regular retailer benefitted not only himself, but also Sanders, Pompey, and Flores. Defendant's agreement to keep the kilogram of cocaine was beneficial to all as well: it fulfilled their shared goal of safely transporting the cocaine to Hobbs so that Sanders and Pompey could resell it to their street distributors, such as Defendant. In sum, the evidence was sufficient to sustain a jury finding of conspiracy to possess with intent to distribute cocaine.

### III. Admission of Coconspirator Statements

Defendant next objects to the district court's determination that nine recorded conversations were coconspirator statements, admissible as nonhearsay under Federal Rule of Evidence 801(d)(2)(E). Defendant claims that their admission was clear error and a violation of his constitutional right to confront witnesses against him.

Coconspirator statements are constitutionally admissible when the trial court determines: "(1) a conspiracy is proven by a preponderance of the evidence; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course and furtherance of the conspiracy." United States v. Powell, 982 F.2d 1422, 1432 (10th Cir. 1992), cert. denied, 508 U.S. 917 (1993). Defendant contests the third element, the determination that the nine recorded statements were "made in the course and

furtherance of the conspiracy." Id. Defendant in essence repeats his insufficiency claim to bar the admission of these statements.

As discussed above, the jury found beyond a reasonable doubt that Defendant was a participant in the conspiracy to transport, resell, and distribute the cocaine involved. The evidence at trial was sufficient to sustain this verdict. Moreover, the nine telephone calls introduced at trial were made during this transportation, resale, and distribution, and were crucial in achieving the goals of the conspiracy: getting the cocaine to Sanders, where it could be parceled out and resold. The district court's admission of the phone calls as 801(d)(2)(E) nonhearsay was not clearly erroneous.

## IV. Admission of Rule 404(b) Evidence

Defendant next claims that the district court abused its discretion in admitting "irrelevant" rule 404(b) evidence at trial. Defendant's brief fails to identify what evidence he is referring to, where in the record it was admitted, or why the testimony is irrelevant, as required by Tenth Circuit Rule 28.2(C)(2). While Defendant alludes to testimony by Mr. Flores that Defendant threatened him not to testify against Defendant, the government maintains that the only such testimony in the record was elicited by Defendant's counsel on cross-examination. In any case, we decline to search the record for support of Defendant's contention when he has failed to locate the supporting references required by rule 28.2(C)(2).

See United States v. Rodriguez-Aguirre, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997).

## V. Severing Firearm Count

Defendant further claims that the district court abused its discretion in not severing Count III – possession of a firearm by a convicted felon – from Counts I and II.  Defendant asserts that since the gun was found twenty-four days after his last known drug trafficking activity, his possession was not "inextricably connected" with charges against him for conspiracy and cocaine possession.  (Op. Br. at 58; Reply Br. at 6-7).  However, Federal Rule of Criminal Procedure 8(a) broadly allows joinder of offenses "of the same or similar character or . . . based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  The district court's decision to refuse severance under rule 14 will not be reversed absent a strong showing of prejudice.  See United States v. Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997).

In Johnson, the defendant similarly contended that firearms counts should be severed from a narcotics count.  We there held that a joint trial was proper "because the handgun was arguably related to and part of Johnson's drug trafficking scheme."  Id.  The court noted that "there was no evidence that Johnson actually used or carried the handgun when he sold cocaine;" however,

"[i]t was reasonable for the jury to infer the handgun aided or assisted him in those transactions." Id. Here, Defendant procured the revolver from his cocaine supplier and kept it in a location where drug transactions occurred. Defendant neglects to show that he was unduly prejudiced by the district court's refusal to sever his firearm and narcotics charges, and thus this issue must fail.

## VI. Jury Instruction on Conspiracy

Defendant next argues that the integrity of his trial was affected by an inadequate jury instruction on the conspiracy charge. While the district court gave an elaborate explanation of the crime, it did not identify one of its elements as "interdependence" among the coconspirators, as enunciated in our cases. See United States v. Evans, 970 F.2d 663, 668 (10th Cir. 1992), cert. denied, 507 U.S. 922 (1993); United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.) cert. denied, 498 U.S. 874 (1990).

Since Defendant's counsel did not object to the instruction at trial, we review it for plain error. See United States v. Kennedy, 64 F.3d 1465, 1478 (10th Cir. 1995). "Plain error exists if the contested instruction was so prejudicial or lacking in its elements that justice cannot have been served." Id. at 1479. When reviewing jury instructions, "the instructions must be read and evaluated in their entirety." United States v. Denny, 939 F.2d 1449, 1454 (10th Cir. 1991). A judge has "substantial discretion in formulating the instructions, so long as they

-13-

are correct statements of the law and adequately cover the issues presented." United States v. Vasquez, 985 F.2d 491, 496 (10th Cir. 1993). We have held that, in order to prove a conspiracy, the government must prove "'"(1) agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged coconspirators.'"" United States v. Edwards, 69 F.3d 419, 430 (10th Cir. 1995) (quoting United States v. Pedraza, 27 F.3d 1515, 1524 (10th Cir.), cert. denied, 513 U.S. 941 (1994) (quoting United States v. Johnson, 12 F.3d 1540, 1545 (10th Cir. 1993)). We have discussed in previous cases the meaning of the interdependence requirement. "[I]nterdependence exists where 'each coconspirator's activities "constituted essential and integral steps toward the realization of a common, illicit goal.'"" Edwards, 69 F.3d at 431 (quoting United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.), cert. denied, 498 U.S. 874 (1990) (quoting United States v. Brewer, 630 F.2d 795, 799 (10th Cir.1980))). We have also described the element of interdependence as requiring "proof that [the conspirators] intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." United States v. Evans, 970 F.2d 663, 671 (10th Cir. 1992), cert. denied, 507 U.S. 922 (1993).

Utilizing Fifth Circuit Pattern Instruction 2.89 (1997) in its entirety, the court instructed:

-14-

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is the kind of "partnership in crime" in which each member becomes the agent of every other member.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That two or more persons made an agreement to commit the crime of possession with intent to distribute 500 grams and more of cocaine, as charged in the indictment; and

Second: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

(Trial Tr. at 333-34).

It might have been preferable for the district court to have used the word "interdependence" in its conspiracy instructions. However, given our standard of review, we only inquire whether the contested instruction as a whole was "so prejudicial or lacking in [their] elements that justice cannot have been served." Kennedy, 64 F.3d at 1479. We think the instructions as a whole adequately apprized the jury of the need to find interdependence. The first part of the given instruction informed the jury that conspirators must "join together," and that they are "partners in crime" for the achievement of their unlawful purpose. (Trial Tr. at 333). Moreover, the instruction continues for five more paragraphs discussing such issues as "formal agreement," "mere presence" and "buyer-seller

-15-

relationship." (Trial Tr. at 334-35).

We have previously held that the omission of "interdependence" as a separately numbered element in the conspiracy instruction was not error.        See United States v. Russell    , 109 F.3d 1503, 1513-14 (10th Cir. 1997).  In      Russell , as here, the jury instruction consisted of two elements instead of four, and did not specify "interdependence" in either.  However, the court found the essential aspects of the necessary four elements subsumed within the two-part instruction. Specifically, "interdependence" was satisfied in the instruction that the jury find "two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Indictment."     Id. at 1513.  There, as here, the instruction provided an additional five paragraphs of particularized instruction.

Given the extensive instruction and the ample evidence concerning the Defendant's mutually beneficial relationship with the coconspirators, the jury was not misled about the necessary elements for conviction on conspiracy.  We see no plain error in the court's instructions to the jury.

## VII.  Obstruction of Justice Enhancement

Defendant next claims that the district court clearly erred in ordering a two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. Defendant alleges that in giving Flores an exculpatory statement for Flores to

sign, he made no overt threat and did not directly tell Flores to lie, but was merely exercising "his constitutional rights to prepare a defense against the charges and seek prospective witnesses in his behalf." (Reply Br. at 22). However, the district court found that Defendant had prepared a false "sworn statement" for Flores in "an effort to block Mr. Flores out as a witness," and that, as a result, Flores felt threatened and fearful for himself and his family. (Sent. Tr. at 49-50, 91-92). We see no clear error in the district court's findings. See United States v. Hankins , 127 F.3d 932, 934 (10th Cir. 1997). The district court could easily have found Defendant's act to be an unlawful attempt to influence a witness, suborn perjury, or produce a false document during an official investigation. See U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. n.4 (1998). Defendant's act fell squarely within the sentencing guidelines' mandate for an upward adjustment, as found by the district court.

## VIII. Firearm Possession Enhancement

Defendant next claims that the district court clearly erred in ordering a two-level upward adjustment for possessing a firearm during a drug trafficking crime under U.S.S.G. §2D1.1(b)(1). Defendant asserts that the weapon had no physical proximity to the drug offense, as required by United States v. Gomez-Arrellano , 5 F.3d 464, 466 (10th Cir. 1993), since it was found in Defendant's apartment twenty-four days following Defendant's last documented drug activity.

In United States v. Smith, 131 F.3d 1392 (10th Cir. 1997), we declared that an enhancement under U.S.S.G. § 2D1.1(b)(1)

> "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2d1.1, comment., (n.3). The government bears the initial burden of proving possession by a preponderance of the evidence, and possession may be satisfied by showing mere proximity to the offense. See United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992). The enhancement is then appropriate unless the defendant proves the exception—that it is clearly improbable the weapon was connected with the offense. See id.

Smith, 131 F.3d at 1400. The government's initial burden is met "when it shows that a weapon was located near the general location where at least part of a drug transaction occurred." United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999) (citing United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998), and United States v. Roederer, 11 F.3d 973, 982-83 (10th Cir. 1993)).

At trial, testimony established that Defendant possessed the gun on October 23, 1997, in a location that was repeatedly the locus for drug trafficking, next to drug paraphernalia and physically near Defendant. In addition, the gun was originally procured from Sanders, Defendant's regular source of cocaine during the same period. By demonstrating these facts, the government thus met its burden of proof regarding possession in proximity to the offense.

The burden thus shifted to Defendant to show that it was "clearly

improbable" that the weapon was connected to the offense. However, Defendant merely reiterated his denial of knowing possession of the gun at sentencing. (Sent. Tr. at 99-103). Only now does Defendant assert that discovery of the gun twenty-four days after the last known drug activity was too distant to allow an upward adjustment. This assertion would not have demonstrated clear improbability even if it had been timely presented. Defendant has thus not demonstrated such clear error that we are "left with a definite and firm conviction that a mistake has been made." Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998) (quoting Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511 (10th Cir. 1985) (citation omitted)).

## IX. Reduction for Minor Role

Defendant next argues that the district court clearly erred in refusing to reduce his sentence under U.S.S.G. § 3B1.2 for minimal participation in the alleged conspiracy. Defendant asserts that because he was not a regular participant in the larger trafficking chain, his sentence should be adjusted accordingly. Indeed, it does not appear that Defendant was a significant player in that larger conspiracy. He purchased drugs regularly from Sanders, but generally had infrequent contact with other members of the group. Only once did he involve himself in the transportation or sale of drugs to or with other members.

While these facts might support an adjustment, our review is for clear error.

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). We find the district court's evaluation of the evidence plausible. See id. The district court noted that, while Defendant was obviously not a major participant, the evidence showed that he sold the conspiracy's drugs to an undercover agent, he received a large quantity of their drugs soon after its arrival, he kept scales used for weighing drugs at his residence, and assisted directly in holding the drugs for a coconspirator when the normal chain of production broke down. Thus, the court concluded that "his role fell somewhat in the middle of all of this and that the Probation Service correctly determined that there should be neither an increase nor a decrease in the offense levels because of his role." (Sent. Tr. at 98). This was a permissible view in light of the record as a whole, and we do not reverse it.

## X. Apprendi Effect on Drug Quantity Findings

Defendant's next claim comes to us months after oral argument. Defendant asserts that, because the jury did not make a specific finding as to the amount of cocaine he possessed, his convictions and sentences should be overturned based on the Supreme Court's recent decision in Apprendi v. New Jersey, 530 U.S. __, 120 S. Ct. 2348 (2000). Although Apprendi was decided after Defendant's brief had been filed, the government concedes its application here. More importantly,

Apprendi presents a new rule of constitutional criminal procedure, and thus should be applied retroactively to cases pending on direct review. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987); see also Powell v. Nevada, 511 U.S. 79, 80 (1994).

In Apprendi, the Court reviewed the increased penalty given to a defendant following his jury conviction for unlawful possession of a firearm under New Jersey law. After conviction, the judge sentenced the defendant to an additional two years beyond the maximum penalty for that crime, based on the defendant's violation of a separate New Jersey hate crime—entitled a "sentence enhancement" law—that had not been included in his indictment or presented to the jury at trial. The Court reversed the decision, citing a violation of Fourteenth Amendment Due Process. The Court then established the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 530 U.S. __, 120 S. Ct. at 2362-63. In doing so, the Court was careful to state that "nothing . . . suggests that it is impermissible for judges to exercise discretion . . . in imposing a judgment within the range prescribed by statute." Id. at 530 U.S. __, 120 S. Ct. at 2358.

Apprendi involved the constitutionality of a state statute under the Fourteenth Amendment's Due Process Clause, but its underlying principles are

equally applicable to federal criminal proceedings. See Jones v. United States,
Nos. 97-1377 and 97-1463, 2000 U.S. App. LEXIS 33133, at *9 (10th Cir. Dec.
19, 2000). Since Apprendi, we have had opportunity to examine the very issue
Defendant appeals. In Jones, we addressed on remand whether the quantity of
drugs involved in an offense under § 841 is an "essential element" which must be
charged in an indictment and submitted to the jury. We answered that question in
the affirmative. See id. at *10. Noting that the jury in that action had not made a
determination as to the amount of drugs used, we reviewed the relevant statute for
direction regarding situations in which no finding is made. Subparagraph
841(b)(1)(C) states that "[i]n the case of a controlled substance in schedule I or
II, . . . except as provided in subparagraphs (A), (B), and (D), such person shall
be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. §
841(b)(1)(C). [1] Subparagraphs (A) and (B) provide higher penalty ranges for
specified drug quantities, while (D) refers to drugs other than cocaine. See 21
U.S.C. § 841(b). Thus, we held that unless a specific drug quantity is charged in
the indictment and found by the jury, a defendant charged with violating § 841(a)
may only be sentenced to a maximum of twenty years. See id. at *14.

Our holding in Jones guides our conclusions here. While explicitly set
forth in the indictment, the amount of cocaine involved in Defendant's

---

[1] Cocaine is a schedule II controlled substance under § 841.

-22-

convictions under § 841(a)(1) and § 846 [2] was not determined by the jury below. [3]

This was error under Apprendi and Jones. However, since Defendant did not object to the court's quantity determination until his supplemental brief on appeal, we review the district court's sentence for plain error. FED. R. CRIM. P. 52(b); see also Johnson v. United States, 520 U.S. 461, 466-68 (1997) (applying the plain error standard of review where the decision not to object was based on "near uniform precedent both from th[e] Court and from the Courts of Appeals").

> Under . . . [plain error review], before an appellate court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

Johnson, 520 U.S. at 466-67 (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (further citations omitted)). In light of Apprendi and our recent decision in Jones, we hold that the district court's ruling is now error that has been made

---

[2] Title 21 U.S.C. § 846, the Attempt and Conspiracy statute, makes the penalty for conspiring to commit certain offenses the same as the penalty for those offenses; hence, we look to § 841 for sentencing determinations under § 846.

[3] In fact, the jury was specifically instructed: "The evidence in this case need not establish that the amount or quantity of controlled substance was as listed in the Indictment, but only that a measurable amount of the controlled substance was in fact the subject of the acts charged in the Indictment." (Trial Tr. at 336.)

plain.  However, no substantial rights have been affected in this instance.

Defendant was sentenced to fourteen years, well below the twenty-year limit of §

841(b)(1)(C).  If Defendant had received a sentence greater than twenty years, we

would have considered whether to exercise our plain error discretion.  Here, there

is no need to do so.  This decision is in accord with other circuits that have

addressed this issue.    See, e.g.  , In re Merrick  , No. 00-3074, 2000 WL 1683478, at

*1 (D.C. Cir. Oct. 10, 2000) (per curiam) (holding that      Apprendi  is not implicated

when a defendant's sentence falls below the basic statutory maximum);       United

States v. Meshack  , 225 F.3d 556, 576 (5th Cir. 2000) (holding that no      Apprendi

error exists when the imposed sentence for a crack cocaine conviction was within

the twenty-year maximum statutory range of 21 U.S.C. § 841(a));       United States v.

Corrado , 227 F.3d 528, 542 (6th Cir. 2000) (holding that enhanced sentences for

RICO conspiracy convictions did not trigger      Apprendi  because they came short of

an unenhanced twenty-year maximum).

In addition, despite Defendant's contention, the district court did not err in

considering drug amount as an aggravating or mitigating factor in establishing

Defendant's offense level under the Sentencing Guidelines.  Not all facts that

affect a defendant's sentence are essential elements, requiring prosecutorial proof

and jury finding.  The   Apprendi  court noted that judges may still "exercise

discretion – taking into consideration various factors relating to both offense and

offender – in imposing a judgment within the range prescribed by statute."

Apprendi, 530 U.S. __, __, 120 S. Ct. at 2358. In fact, the Court specifically avoided disrupting the use or adequacy of the Sentencing Guidelines, noting that "[t]he Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held." Id. at 2366 n.21. Judges may still ascertain drug quantities by a preponderance of the evidence for the purpose of calculating offense levels under the Sentencing Guidelines, so long as they do not sentence above the statutory maximum for the jury-fixed crime. See United States v. Angle, 230 F.3d 113, 123 (4th Cir. 2000) (interpreting §§ 841 and 846 in light of Apprendi). Thus, while the district court's drug quantity finding increased Defendant's offense level and hence his sentence, it did not increase the maximum sentence he faced, and as such did not infract Apprendi.

Defendant further contends that his conviction should fail since he was charged under subparagraph (b)(1)(B) instead of (b)(1)(C). Because weight is an essential element of § 841(b)(1)(B), and was not presented at trial and determined by the jury, Defendant claims that his convictions on Counts I and II should be overturned. However, Defendant fails to note that Counts I and II also charge violations of § 841(a), the subsection of § 841 entitled "Unlawful Acts." For the punishment of these unlawful acts, § 841(a) directs us to § 841(b), entitled "Penalties." After surveying § 841(b), we have held that § 841(b)(1)(C) is the

appropriate penalty in this case, as discussed above.  Failure to cite to the correct corresponding subparagraph in the indictment and sentence was thus harmless error.  See United States v. Swatzie, 228 F.3d 1278 (11th Cir. 2000) (holding that a defendant charged under § 841(a) and §8 41(b)(1)(B) without a jury determination as to cocaine weight should be sentenced under § 841(b)(1)(C) in light of  Apprendi ).

## XI.  Supervised Release

Lastly, Defendant argues that the district court committed plain error by sentencing him to concurrent five-year terms of supervised release following his prison stay.  Defendant points out that 21 U.S.C. § 841(b)(1)(C) is a Class C felony, and 18 U.S.C. § 3583(b)(2) only allows a maximum of three years' supervised release for Class C felonies.  This is a familiar argument, adopted by some of our sister circuits.  See United States v. Good, 25 F.3d 218, 221 (4th Cir. 1994) (holding that a term of supervised release under § 841 cannot exceed the maximum term authorized by § 3583(b));  United States v. Kelly, 974 F.2d 22, 24-25 (5th Cir. 1992) (per curiam) (same).

The issue becomes more complex in comparing the two relevant statutes.  Under 18 U.S.C. § 3583(b)(2), which sets standards for supervised release:  "Except as otherwise provided, the authorized terms of supervised release are . . . (2) for a Class C or D felony, not more than three years . . . ."  Yet Defendant

violated 21 U.S.C. § 841(a), which requires under § 841(b)(1)(C) that "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment." At first blush, this seems to suggest that the only supervised release available for an § 841(b)(1)(C) offense is a three-year term. However, because Congress inserted the language "except as otherwise provided" in § 3583(b)(2) when § 841 was enacted, we have held that Congress carved out an exception to § 3583(b)(2) for the supervised release term under § 841. See United States v. Orozco-Rodriguez, 60 F.3d 705, 707-08 (10th Cir. 1995); accord United States v. Abbington, 144 F.3d 1003, 1006 (6th Cir. 1998); United States v. Bongiorno, 139 F.3d 640, 641 (8th Cir. 1998) (per curiam); United States v. Garcia, 112 F.3d 395, 397-98 (9th Cir. 1997); United States v. Eng, 14 F.3d 165, 172-73 (2d Cir.) cert. denied, 513 U.S. 807 (1994).

It is true, as Defendant points out, that U.S.S.G. § 5D1.2(a) has been amended since our decision in Orozco-Rodriguez. Previously, § 5D1.2(a) declared: "If a defendant is convicted under a statute that requires a term of supervised release, the term shall be at least three years but not more than five years, or the minimum period required by statute, whichever is greater." U.S. SENTENCING GUIDELINES MANUAL § 5D1.2(a) (1994)). At the time of Defendant's trial, that guideline stated: "[I]f a term of supervised release is

ordered, the length of the term shall be . . . (2) at least two years but not more than three years for a defendant convicted of a Class C or D felony." U.S. SENTENCING GUIDELINES MANUAL § 5D1.2(a) (1998). As contrasted to the present guideline, 21 U.S.C. § 841(b)(1)(C) provides that the supervised release shall be "at least three years." We have previously declared that statutes trump guidelines when the two conflict. See United States v. Allen, 16 F.3d 377, 379 (10th Cir.1994); United States v. Campbell, 995 F.2d 173, 175 (10th Cir. 1993); accord Edwards v. United States, 523 U.S. 511, 514 (1998) (stating that "a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines"); see also United States v. Holloway, 991 F.2d 370, 374 (7th Cir. 1993); United States v. Dow, 990 F.2d 22, 24 (1st Cir. 1993); United States v. Sharp, 883 F.2d 829, 831 (9th Cir. 1989) (per curiam); United States v. Donley, 878 F.2d 735, 740-41 (3d Cir. 1989); United States v. Savage, 863 F.2d 595, 600 (8th Cir. 1988). In fact, the Sentencing Commission itself noted: "If the statute requires imposition of a sentence other than that required by the guidelines, the statute shall control." See U.S. SENTENCING GUIDELINES MANUAL § 5G1.1 cmt. (1998). Therefore, we hold that § 841(b)(1)(C) is not restricted by U.S.S.G. § 5D1.2(a) or § 3583(b)(2) from establishing terms of supervised release greater than three years.

For the reasons stated above, Defendant's convictions and sentences are

**AFFIRMED** .