**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 12 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENNETH ROYNEAL EZELL,

    Defendant - Appellant.

No. 01-5217
D.C. No. 00-CR-147-H
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.[**]

A jury convicted Defendant Kenneth Royneal Ezell of being a felon in possession

of a firearm, in violation of 18 U.S.C. § 922(g)(1), and for possession of an unregistered

firearm, in violation of 26 U.S.C. § 5861(d). Defendant appeals, asserting the evidence at

trial was insufficient to support a finding (1) that he knowingly possessed the firearm as

required for a conviction under either statutory provision; or (2) that the alleged

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

possession of the firearm affected interstate commerce as required for a conviction under 18 U.S.C. § 922(g)(1). We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

On August 1, 2000, City of Tulsa police officers received a tip that Kenneth Royneal Ezell could be found in an apartment located at 1334 East 37th Street North in Tulsa, Oklahoma. Officers Derrick Alexander and Melvin Hendrix drove to the apartment to arrest Ezell on an outstanding warrant. A woman, later identified as Helen Thomas, answered the front door. Officer Alexander informed Thomas he had an outstanding arrest warrant for Ezell and asked if Ezell was in the apartment. Thomas denied Ezell was in the apartment, but agreed to allow officers to search the apartment.

Inside the living room, Officer Alexander observed a sofa next to the front door and a mattress on the floor next to the sofa. On the back of the sofa, about three feet from the mattress, he observed the butt of a shotgun wrapped in a sheet. Unwrapping the sheet, the officer observed a .20 gauge shotgun with a sawed-off barrel. The shotgun had a barrel length of fourteen inches. He also observed five shotgun shells next to the shotgun. Thomas denied having any knowledge of the shotgun or shells.

Officer Hendrix then searched the second floor of the apartment. Inside a closet, he observed that a trap door leading to the attic was slightly ajar, and that insulation from the attic had fallen on the closet shelves below the trap door. Officer Hendrix called to

Officer Alexander who also examined the upstairs closet. Both officers called for Ezell but received no response. Officer Alexander then requested and received permission from a neighbor to enter the upstairs bedroom of the adjacent apartment. In that apartment, the officer observed that the trap door had been removed inside the closet and that insulation from the attic had fallen on the clothes. Officer Alexander also observed a footprint on some clothes and noted that a shelf inside the closet was broken. The officer heard sounds of movement from the attic above the closet ceiling. The sound was moving away from the officer. The officers ordered Ezell to come down and remained on the scene. After approximately thirty minutes, Ezell emerged from the attic opening and surrendered. Ezell was not wearing a shirt or shoes, and was unarmed.

The officers arrested both Thomas and Ezell. At the police station, Ezell asked Officer Alexander how Thomas would be charged. The officer responded that Thomas would be charged with harboring a fugitive and with possession of the shotgun. Ezell immediately stated that the shotgun belonged to him and that he did not want Thomas charged with its possession. Officer Alexander informed Officer Hendrix of Ezell's statement. Ezell then asked Officer Hendrix what he could do about "owning up to the shotgun." Ezell later signed a waiver of rights and drafted a written statement. The statement omitted any reference to the shotgun.

At trial, Thomas testified for the government. She testified that she had dated Ezell for several years and that they lived together in Oklahoma City and Tulsa. She also

testified that she had leased the Tulsa apartment where Ezell was found and that Ezell stayed in that apartment while she was in Oklahoma City. Concerning the night of the arrest, she testified that she had arrived home around midnight and found Ezell and two friends in the apartment. Shortly thereafter, she went to sleep on the mattress. She was awakened by police knocking at the front door. The two friends were no longer in the apartment. While she was answering the door, Thomas saw Ezell run upstairs. She testified that she lied to officers about Ezell's presence in the apartment because she was afraid they would both be "in trouble." Thomas also testified that she knew nothing about the shotgun found in the apartment and that she had never seen Ezell with a gun.

The parties stipulated to Ezell's prior felony conviction. The parties also stipulated to evidence that (1) the gun was a "firearm" as described by federal statutory law; (2) the gun and ammunition were manufactured outside Oklahoma and were shipped or transported in interstate commerce; and (3) the shotgun was not registered to Ezell.

## II.

Ezell first asserts the evidence at trial was insufficient to support a finding that he knowingly possessed a firearm. We review de novo sufficiency of evidence claims. See United States v. Vallo, 238 F.3d 1242, 1246 (10th Cir. 2001). Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. at 1247. In reviewing the evidence, we do not weigh conflicting evidence or

consider witness credibility, as that duty is delegated exclusively to the jury. United States v. Sanders, 240 F.3d 1279, 1281 (10th Cir. 2001). We resolve any conflicts in the evidence in favor of the Government. Id.

The Government may establish possession by showing constructive possession; actual possession is not required. United States v. Hien Van Tieu, 279 F.3d 917, 922 (10th Cir. 2002) (citing United States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001)). "To establish constructive possession, the Government must show the defendant knowingly holds the power to exercise dominion or control over the firearm." Id. (quotations and citations omitted). If the defendant has exclusive possession of the premises, knowledge and control are properly inferred. Id. If the defendant is not in exclusive possession, the Government must show a connection or nexus between the defendant and the firearm. Id. "To support a conviction for knowing possession where there is evidence of joint occupancy, the Government must offer evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon." Id. (quotations and citations omitted). In the instant case, the Government relied partially on Ezell's post-arrest statements claiming ownership of the shotgun to establish possession.

A criminal conviction cannot be sustained when the offense is proven solely by an uncorroborated extrajudicial confession. United States v. Chimal, 976 F.2d 608, 610 (10th Cir. 1992) (citing Smith v. United States, 348 U.S. 147, 152 (1954)). In addition to

a confession, the Government must introduce independent corroborating evidence which would tend to establish the trustworthiness of the statement. "The corroborating evidence is adequate if it supports the essential facts admitted sufficiently to justify a jury inference of the truth of the confession." Id. at 610-11 (quotations and citations omitted). Ezell asserts that his statements claiming ownership of the shotgun were motivated by his desire to protect Thomas and accordingly are unreliable. He also notes that his subsequent written statement omits any reference to the shotgun casting further doubt on the reliability of his prior oral statements.

After reviewing the record, we conclude the evidence sufficiently corroborates Ezell's statements claiming ownership of the shotgun. Officers found the shotgun in the apartment where Ezell had been staying. Only Ezell and Thomas were present in the apartment when the officers searched the unit. Thomas maintained throughout the search, arrest and trial that she had no prior knowledge of the shotgun. Officers found the shotgun on the sofa only three feet from the mattress in the living room. Officers testified that there were no beds and no other mattresses in the apartment, raising an inference that Ezell generally slept on the mattress in the living room. Thomas testified that she saw Ezell running up the stairs after hearing the police knock at the door, establishing that Ezell had been in close proximity to the shotgun prior to the officers' arrival. Officers testified they found Ezell in a state of partial undress, raising a reasonable inference that Ezell had been sleeping on the mattress only three feet from the shotgun prior to the

officers' arrival. The evidence, viewed in a light most favorable to the Government, adequately corroborates Ezell's confession and is sufficient to support the jury's finding that Ezell possessed the shotgun.

## III.

Ezell also asserts the evidence was insufficient to show that his alleged firearm possession was in or affecting interstate commerce as required by 18 U.S.C. § 921(g)(1). The parties stipulated to evidence that the firearm and ammunition were manufactured outside Oklahoma and were shipped or transported in interstate commerce. But Ezell argues that, to support a conviction, the Government must introduce evidence the firearm possession had a current, actual and substantial effect on interstate commerce. This Court addressed and expressly rejected Ezell's arguments in United States v. Dorris, 236 F.3d 582, 584 (10th Cir. 2000) (holding the Government need not prove a firearm possession had a substantial effect on interstate commerce to support a conviction). Under controlling Tenth Circuit precedent, the Government need only establish the possessed firearm previously traveled in interstate commerce to support a conviction under 18 U.S.C. § 922(g)(1). See id. Ezell stipulated to evidence sufficient to establish the firearm possession was in or affecting interstate commerce.

## IV.

The Government introduced sufficient evidence to corroborate Ezell's confession and the jury reasonably found Ezell constructively possessed the firearm. Ezell stipulated

to facts sufficient to establish that the firearm possession was in and affecting interstate commerce.

Accordingly, the district court decision is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge