**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANGEL GUZMAN-AVILES,

Defendant - Appellant.

No. 15-3250
(D.C. No. 2:14-CR-20017-CM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH,** Chief Judge, **BRISCOE**, and **MURPHY**, Circuit Judges.

## I.  Introduction

Appellant, Angel Guzman-Aviles, was charged in a one-count indictment with possession with intent to distribute more than fifty grams of methamphetamine.  He pleaded guilty and was sentenced to 235 months' imprisonment.  Guzman-Aviles appeals his sentence, arguing the district court

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case was ordered submitted without oral argument.  This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

erred by increasing his base offense level pursuant to U.S.S.G. § 2D1.1(b)(1) on the court's conclusion he possessed a dangerous weapon in connection with the drug offense. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **affirm** Guzman-Aviles's sentence.

## II. Discussion

Guzman-Aviles pleaded guilty to a one-count indictment charging him with possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). Because of the quantity of drugs involved in the crime of conviction, the Presentence Investigation Report ("PSR") assigned Guzman-Aviles a base offense level of thirty-eight. *See* U.S.S.G. § 2D1.1(c)(1). The PSR subtracted two levels pursuant to U.S.S.G. § 3E1.1(a) to reflect Guzman-Aviles's acceptance of responsibility, but added two levels based on the position Guzman-Aviles possessed a dangerous weapon during the crime of conviction. *See id.* § 2D1.1(b)(1). Referencing Guzman-Aviles's Criminal History Category I and a total offense level of thirty-eight, the PSR calculated an advisory guidelines range of 235-293 months' imprisonment.

Guzman-Aviles objected to the application of the dangerous-weapon enhancement, arguing it was not supported by the evidence. He reasserted that objection in a written sentencing memorandum filed on August 31, 2015. Specifically, he argued the confidential informant's statement that he purchased firearms from Guzman-Aviles was insufficient to show a firearm was possessed

"in the vicinity of drug trafficking activity" as required by this court's precedent. *United States v. Castro-Perez*, 749 F.3d 1209, 1211 (10th Cir. 2014).

Guzman-Aviles's objection to the application of § 2D1.1(b)(1) was addressed at the sentencing hearing. The government presented the testimony of Felix Leal, a convicted drug trafficker who obtained methamphetamine for resale from Guzman-Aviles. Leal testified that over a three-month period, he obtained five to seven pounds of methamphetamine per week from Guzman-Aviles. If Leal was unable to pay the full amount for the drugs he received, Guzman-Aviles would front the drugs. As to payment for the fronted drugs, Leal testified there was "never [a] discrepancy about money" and if he could not pay in full "it would get [taken] care of the next day." Leal also testified he dealt with Guzman-Aviles almost every day "or, without a doubt, every other day" and had no interactions with Guzman-Aviles "outside of drug transactions." As to Guzman-Aviles's possession of a firearm, Leal testified that in December 2013 or January 2014, he gave Guzman-Aviles a .45 caliber Ruger pistol. In exchange, Guzman-Aviles reduced Leal's outstanding drug debt by $1000.

After Leal's testimony, the district court heard argument from the parties on the applicability of the § 2D1.1(b)(1) enhancement. Guzman-Aviles argued, first, that Leal's testimony on the gun issue was not credible. In the alternative, he argued Leal's testimony, even if true, was insufficient to support the application of the enhancement because it did not support the proposition that

-3-

Guzman-Aviles possessed the firearm while engaged in drug-trafficking activities. Relying on *Castro-Perez*, 749 F.3d at 1209, Guzman-Aviles asserted Leal's testimony failed to show the necessary "temporal and spatial relation" between the firearm and the drug-trafficking activity for which Guzman-Aviles was convicted. Guzman-Aviles further noted it could not be inferred that he always carried a firearm during drug deals because he did not have one in his possession when he was arrested even though his arrest occurred during a controlled buy.

After arguing Leal's testimony was credible, the government asserted the testimony supported application of the enhancement because it showed the gun was given to Guzman-Aviles during a drug transaction in partial payment for drugs Guzman-Aviles fronted Leal. Guzman-Aviles responded to the government's argument by asserting it could be inferred from Leal's testimony that the gun was partial payment for a debt owing from a prior drug transaction and that no drugs were present when the gun was exchanged. In rebuttal, the government noted Leal never testified that he met with Guzman-Aviles solely to pay for fronted drugs. He, instead, testified he only met with Guzman-Aviles to conduct drug transactions.

The district court took the issue under advisement. At a second hearing on October 13, 2015, the court concluded the § 2D1.1(b)(1) enhancement was appropriate. The district court found Leal's testimony that he never dealt with Guzman-Aviles outside of drug transactions during the three months preceding his

arrest to be credible. The court concluded Leal's testimony that he gave the Ruger pistol to Guzman-Aviles provided the necessary evidence of a "spacial and temporal relationship between the weapon, drug trafficking activity, and defendant" because it supported the proposition that the gun was given to Guzman-Aviles "during a drug exchange, not at a separate time." The court summarized Leal's testimony as follows:

> [Leal] testified that around December 2013 or January 2014, he gave defendant a 45-caliber Ruger handgun in exchange for $1,000 off of a drug debt. Leal did not expressly testify that drugs were actually present or nearby when he gave the handgun to defendant. Leal testified, however, that he never dealt with . . . [Guzman-Aviles] outside of drug transactions, and no evidence suggests otherwise. Leal's testimony further supports that Leal only knew defendant in his capacity as Leal's drug supplier, that Leal met with defendant every day or every other day during the three months prior to Leal's arrest and defendant's arrest, and defendant frequently fronted drugs for one day if Leal could not pay in total.

Because of the application of the § 2D1.1(b)(1) enhancement, Guzman-Aviles did not qualify for safety-valve relief. *See* U.S.S.G. §§ 2D1.1(b)(17), 5C1.2(a)(2). He was sentenced to serve a 235-month term of incarceration, the low end of the advisory guidelines range calculated by the district court.

Guzman-Aviles argues the sentence imposed by the district court is procedurally unreasonable because the court did not correctly calculate his advisory guidelines range.[1] *See United States v. Hildreth*, 485 F.3d 1120, 1127

---

[1]Guzman-Aviles does not challenge the district court's refusal to grant him
(continued...)

(10th Cir. 2007) ("To impose a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range . . . ." (quotation omitted)). Specifically, Guzman-Aviles asserts the court erred by adding two levels to his base offense level pursuant to § 2D1.1(b)(1). The parties disagree over whether the issue Guzman-Aviles raises on appeal is reviewed for clear error or de novo. The government asserts the clear error standard applies because Guzman-Aviles is challenging the district court's finding that the firearm was possessed during a drug exchange that occurred between Leal and Guzman-Aviles. *See United States v. Gillespie*, 452 F.3d 1183, 1189 (10th Cir. 2006) (holding a district court's decision to enhance a defendant's sentence for obstruction of justice is reviewed only for clear error). Guzman-Aviles argues the de novo standard applies because the facts found by the district court are undisputed and those facts do not provide sufficient support for the enhancement. *See Castro-Perez*, 749 F.3d at 1210 (reviewing de novo the question of whether the undisputed facts warranted a sentencing enhancement under § 2D1.1(b)(1)). It is unnecessary to resolve this disagreement because Guzman-Aviles is not entitled to relief under either standard.[2]

---

[1](...continued)
a variance.

[2]Guzman-Aviles's assertion that the facts are undisputed is tenuous at best. His appellate argument necessarily attacks the district court's finding that drugs were present at every meeting between him and Leal.

The § 2D1.1(b)(2) enhancement applies if the government shows, by a preponderance of the evidence, "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (quotation omitted). The government can satisfy this burden by showing the firearm was "located near the general location where at least part of a drug transaction occurred." *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001) (quotation omitted). Guzman-Aviles argues the government failed to meet its burden because the evidence it presented at the sentencing hearing did not establish "that the gun was physically located near drugs or a drug transaction." *Castro-Perez*, 749 F.3d at 1211 (concluding there "was no physical relation between the weapon and the drug trafficking activity" because the weapon was delivered "after the actual controlled purchase [was] completed" (quotation omitted)); *see also United States v. Henderson*, 604 F. App'x 655, 657-58 (10th Cir. 2015) (unpublished disposition) (accepting the government's concession that the imposition of the § 2D1.1(b)(1) enhancement was error because the evidence did not show a physical link between the firearm and the drugs).

Contrary to Guzman-Aviles's argument, the circumstances surrounding the transfer of the firearm from Leal are distinguishable from those in *Castro-Perez* or *Henderson*. In both of those cases there was no evidence from which the district court could reasonably conclude the weapon was "spatially close to

specifically identifiable drug-trafficking activities." *Henderson*, 604 F. App'x at 657 (discussing *Castro-Perez*). Here, Leal's testimony provides the evidence necessary to support the required temporal and spatial relation.

When a gun exchange occurs during a drug transaction, the gun is present during drug-trafficking activity and the § 2D1.1(b)(1) enhancement is appropriate. Leal testified he gave the pistol to Guzman-Aviles and also testified he never interacted with Guzman-Aviles outside of drug transactions. Thus, it follows, the firearm was present during a drug transaction. Guzman-Aviles concedes the law allows inferences but asserts the district court's ruling required the court to make an inference not supported by the record because Leal never explained what he considered to be a "drug transaction." *See Castro-Perez*, 749 F.3d at 1211 (concluding the record did not support the inference urged by the government). According to Guzman-Aviles, Leal's definition of a drug transaction may encompass something other than the transfer of drugs from one person to another, including the payment of money for drugs previously transferred. The interpretation Guzman-Aviles advocates is inconsistent with the evidence presented. As the district court noted, Leal testified he conducted a drug transaction with Guzman-Aviles daily or, at least, every other day and obtained approximately five to seven pounds of methamphetamine from him each week, typically in one-pound increments. This testimony provides ample support for the conclusion Leal received a supply of drugs from Guzman-Aviles each time they

met, including the day on which Leal gave Guzman-Aviles the pistol. It does not support Guzman-Aviles's argument that some of his meetings with Leal may have involved only the payment for drugs fronted during a prior meeting. Under that scenario, it is very unlikely Leal could have obtained from Guzman-Aviles the total weekly amount of methamphetamine to which Leal testified. Further, Leal's testimony that he paid for drugs either the day he received them or the next day, is completely consistent with the conclusion that Leal paid for fronted drugs at the same time he met with Guzman-Aviles to receive a new supply.

Because the government has shown by a preponderance of the evidence the existence of a temporal and spatial relation between the firearm, Guzman-Aviles, and drug trafficking activity,[3] the district court did not err when it applied the § 2D1.1(b)(1) enhancement. Further, Guzman-Aviles was correctly denied relief under the safety-valve provision because, by accepting the pistol from Leal during a drug deal, he actually possessed the firearm in connection with the crime of conviction. *See Zavalza-Rodriguez*, 379 F.3d 1182, 1188 (10th Cir. 2004) (precluding application of relief under § 5C1.2(a)(2) when a defendant actively possesses a firearm in connection with the offense).

---

[3]Although a defendant can avoid application of the § 2D1.1(b)(1) enhancement by showing "it is clearly improbable that the weapon was connected to the offense," Guzman-Aviles has not attempted to do so. *See United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001).

**III.    Conclusion**

The sentence imposed by the district court is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge