**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM M. ONHEIBER,

Defendant - Appellant.

No. 98-6237

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-97-143-M)**

---

Paul Antonio Lacy, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Appellant.

Timothy W. Ogilvie, Assistant United States Attorney (Patrick M. Ryan, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Appellee.

---

Before **ANDERSON**, **KELLY**, and **MURPHY**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

On February 9, 1998, William M. Onheiber entered into a plea agreement under which he agreed to plead guilty to attempting to possess with intent to distribute six kilograms of cocaine powder, in violation of 21 U.S.C. § 841(a)(1). On May 12, 1998, Onheiber was sentenced to a term of 70 months' imprisonment for this offense. Onheiber appeals from this sentence, arguing that the district court should have, pursuant to Sentencing Guideline § 2X1.1, awarded him a three-level reduction in base offense level because his offense was only an attempt, and that the district court should have, pursuant to Sentencing Guideline § 3B1.2, awarded him an additional two-level reduction in base offense level because he was only a minor participant in the crime. For the reasons discussed below, we affirm.

## BACKGROUND

In July 1997, agents of the Drug Enforcement Administration (DEA) began to investigate the activities of Richard Dunn, Onheiber's co-defendant below. Through confidential informants and undercover agents, the DEA learned that Dunn was looking to buy large quantities of cocaine powder for a third-party buyer, whom Dunn identified as "Bill." R. Vol. I, Tab 67, App. A. at 7. Dunn, the confidential informant, and undercover agents set up a meeting at Dunn's

residence to consummate a large sale of cocaine. Dunn stated that the third-party buyer would be there.

The meeting took place on August 2, 1997. The confidential informant, an undercover agent, Dunn, and Onheiber were present. Dunn told the agent and the confidential informant that, before the deal could be completed, he and Onheiber had to view the cocaine. The confidential informant replied that he wanted to see the money before he would let Dunn and Onheiber see the drugs. Onheiber left the room and returned with a brown paper sack full of bundles of bound U.S. currency. At that point, the agent and the informant retrieved six kilograms of cocaine from the informant's vehicle and brought it into the residence. While the informant inspected the money, Onheiber ran some tests on the cocaine to determine its quality.

While Onheiber was inspecting the cocaine, the informant, using a cellular phone, placed a call to some other DEA agents and gave them a prearranged arrest signal. Soon thereafter, law enforcement agents entered Dunn's residence and arrested Dunn and Onheiber. Upon arrest, Onheiber told agents that he was merely a middleman in the transaction, and that an unknown man had come to his motel room that day and informed him that he was to turn the drugs over to the unknown man for delivery to Wisconsin. Onheiber also told agents that he had no idea how much money was in the brown paper sack. Onheiber, however,

informed agents that, in exchange for leniency, he could possibly arrange a large marijuana sting operation for them.

Later that evening, a search warrant was executed at Dunn's residence. Officers recovered the six kilograms of cocaine, as well as over $126,000, a ski boat, and a red Cadillac.

On September 3, 1997, a federal grand jury returned a two-count indictment against Dunn and Onheiber. Count I charged them with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II charged them with attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Onheiber and the government entered into a plea agreement, finalized February 9, 1998, under which the government dismissed Count I, and Onheiber pled guilty to Count II.

Shortly after the plea agreement was finalized, a United States Probation Officer prepared a Presentence Investigation Report (PSR) recommending that Onheiber be assigned a final base offense level of 27 and a criminal history category of I. The Sentencing Guidelines prescribe a base offense level of 32 for drug offenses involving 6 kilograms of cocaine. USSG § 2D1.1(c)(4) (1997). The probation officer recommended, however, that Onheiber be granted a two-level reduction in base offense level under USSG § 2D1.1(b)(6) because the criteria in USSG § 5C1.2 were met, and that Onheiber be granted an additional

three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, thus arriving at the final level of 27.

Onheiber objected to the recommendations of the PSR. He argued that he was entitled to an additional three-level reduction in base offense level, pursuant to USSG § 2X1.1, because his offense was only an attempt, and he argued that he was entitled to another two-level reduction in base offense level because he claimed he was only a minor participant in the drug offense. The district court overruled these objections, and adopted the probation officer's recommendations. The applicable guideline range was 70-87 months' imprisonment; the district court sentenced Onheiber to 70 months' incarceration, an amount at the lower end of the guideline range.

Onheiber now appeals from the sentence imposed by the district court, raising the same arguments put forth in his objections to the PSR.

**DISCUSSION**

**I.      USSG § 2X1.1 Does Not Apply to Attempted Drug Crimes**

By its express terms, § 2X1.1 does not apply "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section." USSG § 2X1.1(c)(1) (1997). The application notes following § 2X1.1 state that "[o]ffense guidelines that expressly cover attempts include . . .

§ 2D1.1," the guideline under which Onheiber was sentenced. USSG § 2X1.1, comment. (n.1) (1997). Indeed, the title of § 2D1.1 states flatly that the guideline covers "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit these Offenses); Attempt or Conspiracy." USSG § 2D1.1 (1997). Thus, the plain text of the Guidelines dictates the application of the substantive guideline, § 2D1.1, and forecloses Onheiber's argument that § 2X1.1 applies here.

Onheiber argues, however, that while the title of § 2D1.1 may indeed mention attempts, there is nothing in the text of the guideline which instructs courts how to sentence persons convicted of attempting to consummate drug offenses. Thus, Onheiber argues that, because "there is no 'clear and definite' indication of what a sentencing court is supposed to do with attempted drug transactions," Appellant's Br. at 17, the rule of lenity should be applied and the shorter sentence imposed. See Ladner v. United States, 358 U.S. 169, 178 (1958) (describing the rule of lenity as requiring courts to interpret ambiguous statutes in favor of criminal defendants); United States v. Blake, 59 F.3d 138, 140 (10th Cir. 1995) (stating that the rule of lenity may be applied in interpreting Sentencing Guidelines). The rule of lenity, however, applies only in cases where there is a "'grievous ambiguity or uncertainty in the language and structure'" of a provision. United States v. Wilson, 10 F.3d 734, 736 (10th Cir. 1993) (quoting

Chapman v. United States, 500 U.S. 453, 463 (1991)).  For two reasons, we do not think that the Guidelines contain a grievous ambiguity with regard to whether § 2X1.1 should apply to attempted drug crimes.

First, as noted above, section 2X1.1 clearly states that it does not apply when the substantive guideline covers attempts, and, in the application notes, it specifically mentions § 2D1.1 as a substantive guideline which covers attempts. We think this language is a clear indication that the Sentencing Commission intended § 2D1.1, and not § 2X1.1, to apply in cases of attempted drug transactions.

Second, an examination of recent amendments to the Guidelines, and of case law interpreting those amendments, clears up any remaining hint of ambiguity here.  Prior to 1992, the Guidelines contained a section which stated that "[i]f a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed."  USSG § 2D1.4 (1991).  In 1992, the Sentencing Commission, in Amendment 447, deleted this section, and added several cross-references following § 2X1.1, including the reference to § 2D1.1; the Commission also added the words "Attempt or Conspiracy" to the headings of several guidelines, including § 2D1.1.  The Commission stated that "[t]his amendment clarifies and simplifies the guideline

provisions dealing with attempts and conspiracies in drug cases."  USSG App. C,

Amendment 447.

We have implied, although not explicitly held, that this amendment effected

no change in the substantive interpretation of the Guidelines.  See United States

v. Moore, 130 F.3d 1414, 1417 n.1 (10th Cir. 1997).  Other circuits have

explicitly stated that the amendment was not intended to effect substantive

change, but rather "effectively incorporated [the former § 2D1.4] into the

guidelines applicable to certain substantive narcotics offenses," including

§ 2D1.1.  United States v. Howard, 998 F.2d 42, 50 (2d Cir. 1993); see also

United States v. Ynfante, 78 F.3d 677, 680 (D.C. Cir. 1996) (stating that by

repealing § 2D1.4 and adding the cross-references, the Commission "consolidated

inchoate drug offenses with the substantive offenses covered by § 2D1.1");

United States v. McCaskey, 9 F.3d 368, 373 (5th Cir. 1993) (stating that § 2D1.4

"was deleted from the guidelines and consolidated with the guidelines applicable

to the underlying substantive offenses"); United States v. Carroll, 6 F.3d 735, 742

n.5 (11th Cir. 1993) (stating that § 2D1.4 "was deleted and consolidated with the

substantive offense section at § 2D1.1" and that this amendment "resulted in no

substantive change"); United States v. Crawford, 991 F.2d 1328, 1332 n.3 (7th

Cir. 1993) (stating that the amendment was "only meant to clarify and simplify

the guideline provisions dealing with attempts and conspiracies"); United States

v. Frazier, 985 F.2d 1001, 1002 n.1 (9th Cir. 1993) (stating that the Commission "consolidated provisions dealing with attempts and conspiracies in drug cases with guidelines applicable to substantive drug offenses"). Indeed, the deleted § 2D1.4 contains a historical note, stating that the section was "deleted by consolidation with the guidelines applicable to the underlying substantive offenses." USSG § 2D1.4 (1997) (historical note). We find these authorities persuasive. We now join the other circuits which have spoken on the issue, and expressly hold that Amendment 447 effected no substantive change in the Guidelines, but rather was intended to incorporate the former § 2D1.4 into the framework of the amended Guidelines. Defendants convicted of attempting to commit drug offenses, or of conspiring to commit drug offenses, are to be sentenced under the same Guidelines as defendants convicted of completed drug offenses. There is no grievous ambiguity here, and, accordingly, the rule of lenity is not relevant to this case.[1]

---

[1]Although this issue was neither relied on by the district court nor briefed by the parties, we note that even if § 2X1.1 did somehow apply here, Onheiber would almost certainly not have been able to take advantage of it, because his "offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim." USSG § 2X1.1, comment. (backg'd) (1997). "In such cases, no reduction of the offense level is warranted." Id.

## II.    Applicability of USSG § 3B1.2

Onheiber next contends that the district court erred by refusing to grant him a two-level reduction in base offense level because he was merely a minor participant in the crime.  We review the district court's decision for clear error, because the court's determination that Onheiber was more than a minor participant is a finding of fact.  See United States v. Telman, 28 F.3d 94, 97 (10th Cir. 1994); United States v. Ballard, 16 F.3d 1110, 1114 (10th Cir. 1994).  A defendant has the burden of establishing, by a preponderance of the evidence, that he is entitled to a reduction in base offense level under § 3B1.2.  Telman, 28 F.3d at 97.

In finding that Onheiber was more than a minor participant, the district court listed the following facts as supportive of its conclusion:  (1) Onheiber "handled a large sum of cash"; (2) Onheiber "had responsibility for transporting the cocaine"; (3) Onheiber "had some knowledge of cocaine"; and (4) Onheiber stated that "he could arrange . . . a multi-pound marijuana deal."  R. Vol. III, at 12-13.  We think these facts amply support the district court's conclusion that Onheiber was more than a minor participant, and therefore was not entitled to a reduction under § 3B1.2.  The district court's findings are not clearly erroneous.

Onheiber argues that because he is "less culpable relative to other participants," United States v. Santistevan, 39 F.3d 250, 254 (10th Cir. 1994), he

is entitled to a sentence reduction. Onheiber argues essentially that he was merely a middleman in the transaction, hired to bring the drugs to another contact, and that he had limited knowledge of and control over the transaction. While it is true that the Guideline is aimed at penalizing relatively less culpable participants more leniently, a defendant is not necessarily entitled to a sentence reduction under § 3B1.2 solely because he can show that he was a middleman. See United States v. Donaldson, 915 F.2d 612, 615 (10th Cir. 1990). In this case, Onheiber has shown us nothing to persuade us that the district court's factual findings, adequately supported by the record, are clearly erroneous.

AFFIRMED.