**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REGINA ANN EVANS,

Defendant-Appellant.

No. 99-6218
(W. District of Oklahoma)
(D.C. No. 98-CR-93-T)

_____          _____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NAKISHA JOHNSON,

Defendant-Appellant.

No. 99-6184
(W. District of Oklahoma)
(D.C. No. 98-CR-93-T)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. INTRODUCTION

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

These two cases, which the court has consolidated solely for purposes of disposition, relate to a crack cocaine conspiracy centered in and around Elk City, Oklahoma. Regina Ann Evans was convicted by a jury on one count of conspiracy to possess with intent to distribute crack cocaine in violation of 18 U.S.C. §§ 841(a) and 846, one count of maintaining a place for the purpose of distributing and using a controlled substance in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, and three counts of distribution of crack cocaine in violation of § 841(a). Nakisha Johnson, Evans' daughter, was convicted by a jury of one count of conspiracy to possess with intent to distribute crack cocaine in violation of §§ 841(a) and 846 and one count of distribution of crack cocaine in violation of § 841(a). Both were sentenced to lengthy sentences in federal prison.

On appeal, Evans and Johnson assert that the district court erred in crediting the government's proffered race-neutral explanation for its use of a peremptory challenge to remove an African-American from the jury panel. Evans further asserts, for the first time on appeal, that the government's use of

peremptory challenges to remove two young female jurors constituted gender discrimination in violation of the Supreme Court's mandate in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994). Finally, Johnson contends that the district court erred when it concluded that she was not a minor participant in the crack cocaine conspiracy, and, therefore, not entitled to a two-point reduction in offense level pursuant to U.S.S.G. § 3B1.2. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. ANALYSIS

1. CHALLENGE TO EXCLUSION OF AFRICAN-AMERICAN JUROR

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Constitution is violated when a prosecutor uses a peremptory challenge to strike a potential juror on account of race. Under *Batson*, a defendant must first establish a *prima facie* case of purposeful racial discrimination in selection of the jury. *See id.* at 96. "Once the defendant makes a *prima facie* showing, the burden shifts to the [prosecution] to come forward with a neutral explanation" for the peremptory strike. *Id.* at 97. A neutral explanation is "based on something other than the race of the juror" and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Whether a prosecutor's

explanation for peremptory strikes is race-neutral is a question of law, *see United States v. Sneed*, 34 F.3d 1570, 1580 (10th Cir. 1994); whether intentional discrimination occurred is a question of fact, *see United States v. Johnson*, 4 F.3d 904, 913 (10th Cir. 1993).

The defendants' *Batson* claim in this case arose from the following circumstances. During the jury selection process, Charita Buckner[1] was one of twelve original individuals called from the venire and seated in the jury box. In response to questions by the district court, Buckner indicated that she was single, had graduated from Milwood High School in Oklahoma City, and worked for a temporary service.

After the district court had inquired about the background of each of the twelve jurors seated in the jury box, the parties began exercising their peremptory challenges. The government waived its first two peremptory challenges, but excused Buckner with its third. Shortly thereafter, before a jury had been empaneled, defendants' counsel challenged the prosecutor's decision to excuse Buckner, an African-American woman. In response, the prosecutor stated that he

---

[1]In her brief on appeal, Johnson asserts that the name of the African-American juror was Michelle Bassham, not Charita Buckner. A review of the record reveals, however, that Charita Buckner was, indeed, the name of the African-American juror, and that Michelle Bassham was a young white woman who was also excused from the jury panel by the government with a peremptory challenge.

had struck Buckner for the following two reasons: (1) her apparent youth and immaturity; and (2) her apparent lack of interest in the proceedings, as reflected by her terse answers to the district court's questions and her consistent propensity to look down while the court was questioning the other potential jurors. At that juncture, the district court took a recess to study the issue, indicating that it would take up the matter at a bench conference immediately following the recess.

At the bench conference, the prosecutor again explained that he had excused Buckner because of her young age. The prosecutor noted that Buckner appeared to be a recent high school graduate and that it was his usual practice to excuse younger jurors in cases of this nature. The prosecutor noted that consistent with that practice, he had excused another young juror, Michelle Bassham. The prosecutor also reiterated that he was motivated to strike Buckner because of what he perceived to be a lack of interest on her part in the proceedings. At the conclusion of the bench conference, the district court found as follows:

> Addressing the *Batson* problem, if the explanation of the prosecution is not inherently discriminatory, the explanation, as I understand the authorities, is deemed to be race neutral.
> Here, and consistent with my earlier findings . . . I recognize[] that this juror in issue [is] very young. In my judgment, I thought she was a reluctant juror. I use the word "reluctant" rather than "indifferent" or "inattentive." I think perhaps all three terms might apply to her.
> I personally was a little concerned about her responses. I thought they were not as forthcoming as they might have been. The

manner of her responses was very soft-spoken, and avoiding eye contact, and many times she looked at the floor or looked away.

It's my practice, at least certainly my effort, to make jurors feel as comfortable as they can under those inherently stressful circumstances, and I tried to be as polite and low key with all of the jurors as I could be, and including her, because she was so young and because she did seem to be uncomfortable or reluctant or inattentive or indifferent.

So I think that [the prosecutor's] stated explanation is consistent with the facts, and that the young woman did have some appearances that, whatever her race, might have been the subject of a peremptory challenge. I thought so long before this *Batson* issue ever came up.

. . . .

But what I thought, I think, is not the criterion; it's what [the prosecutor's] purpose was. I mention that because I think, in evaluating his reasons and explanation, including his credibility, that those weigh very significantly in favor of the government's position.

Second, her young age is an understandable concern in a case of significant consequence in a big drug case of this kind, and I am mindful and give some significance to the fact that [the prosecutor], consistent with that concern, not only excused this witness but also another one who was clearly–the two of them, I believe, were clearly the youngest jurors in the box at that time.

And with regard to the credibility of [the prosecutor], I have absolutely no reason to question his credibility in this regard, and that is also a factor that is to be taken into consideration. Frankly, I think that his stated purposes are consistent with the facts here, and I find nothing inherently discriminatory or discriminatory about the decision.

The reason I hesitated in the very beginning was that I'm so aware of *Batson,* in its broad application, I simply was not sure enough about the criteria and procedures that have been construed after the *Batson* decision to rule as confidently as I am able to do now having had the chance to bone up on those matters.

But here there are clearly race-neutral reasons for the challenge. I am quite satisfied now that, as carefully as we must approach these issues, that, under these circumstances, under the controlling authorities, the objections must be overruled, and that will be the ruling of the Court.

To the extent the defendants assert that the reasons advanced by the prosecutor for excusing Buckner are not legitimate, those arguments are foreclosed by Tenth Circuit precedent. *See United States v. Joe*, 8 F.3d 1488, 1499 (10th Cir. 1993) (holding that a prospective juror's youth and maturity level are legitimate, race-neutral considerations under *Batson*); *Johnson*, 4 F.3d at 913 (noting that juror inattentiveness during *voir dire* is a legitimate, race-neutral consideration under *Batson*). Furthermore, to the extent the defendants assert that the prosecutor's stated reasons for excusing Buckner were pretextual, they have completely failed to carry their burden of demonstrating that the district court's findings are clearly erroneous. *See Johnson*, 4 F.3d at 913 (holding that question of whether prosecutor intentionally discriminated is a question of fact).

As evidence of pretext, the defendants simply note that a review of the record reveals that Buckner's responses during *voir dire* were as complete and forthcoming as any of the other potential jurors. The problem with this argument is that it completely ignores the district court's findings regarding Buckner's demeanor, attitude, and manner of responding to the district court's questions. There is simply nothing in the record that casts any doubt on the district court's conclusion that Buckner was a young, inexperienced, "reluctant" juror or, more importantly, the veracity of the prosecutor's stated reasons for excusing Buckner. Counsel for co-defendant Junior Lane, himself, recognized during the bench

conference that Buckner appeared hesitant and shy.  As noted by the Supreme Court, "evaluation of a prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province."  *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion).  The district court's decision to credit the prosecutor's legitimate, race-neutral explanation of his reasons for striking Buckner is well within the bounds of reasonable choice given the circumstances of this case.

2.  CHALLENGE TO EXCLUSION OF FEMALE JURORS

In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), the Supreme Court extended *Batson* to prohibit the use of peremptory strikes on the basis of sex.  For the first time on appeal, Evans asserts that the prosecutor violated the dictates of *J.E.B.* when he excused Buckner and Bassham from the jury panel.  Because Evans failed to timely raise the issue below, this court's review is for plain error only.  *See United States v. Bedonie*, 913 F.2d 782, 794 (10th Cir. 1990) (reviewing *Batson* challenge raised for the first time on appeal for plain error).  Under the plain-error rubric, before this court can correct an error not raised at trial there must be (1) an error, (2) that is plain, and (3) that error must affect the defendant's substantial rights.  *See Johnson v. United States*,  117 S. Ct. 1544, 1549 (1997).  If all three of those conditions precedent are met, this court can exercise its discretion to correct the error only if the error "seriously affect[s] the

fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted).

In support of her *J.E.B.* claim, Evans notes the following comment of the prosecutor: "And I've just found in my experience in trying the cases that [young] jurors, particularly young women, have more of a difficulty in reaching these very, very difficult decisions that are affecting the lives of people." This court agrees that, viewed in isolation, this remark **might** appear to implicate *J.E.B.*[2] Nevertheless, when the remark is considered in the context of the entirety of the proceedings before the district court on the *Batson* question, it cannot reasonably

---

[2]We emphasize the word "might" because of the vastly different contexts between this case and *J.E.B. J.E.B.* involved a paternity-support suit brought by the state of Alabama on behalf of a young child, a case apparently involving a swearing contest between the child's mother and the alleged father. 511 U.S. at 129. Alabama used nine of its ten peremptory challenges to remove men from the jury panel, with the effect that the jury seated consisted entirely of women. *See id.* In support of its contention that the sex-based peremptory strikes were proper, Alabama argued that its decision to strike all males "may reasonably have been based upon the perception, supported by history, that men otherwise totally qualified to serve upon a jury in any case might be more sympathetic and receptive to the arguments of the man alleged in a paternity action to be the father of an out-of-wedlock child, while women equally qualified to serve upon a jury might be more sympathetic and receptive to the arguments of the complaining witness that bore the child." *Id.* at 137-38 (quotation omitted). This particular trial, on the other hand, involved two female defendants and one male defendant. Furthermore, the subject of this trial, a large drug conspiracy, is not a subject matter upon which historical stereotypes of gender bias would normally come to bear, unlike the paternity questions at issue in *J.E.B.* or the question of rape discussed therein. Nevertheless, for the purposes of this appeal, this court assumes that the comment of the prosecutor implicates the Supreme Court's holding in *J.E.B.*

be concluded that the prosecutor's remarks evince any sex-based animus or stereotyping in the use of peremptory strikes to remove Buckner and Bassham. In particular we note that this comment is the only remark about gender in the approximately seventy pages of the trial transcript devoted to the *Batson* question. A review of that transcript reveals that all of the parties were focused on the question of Buckner's youth and inattentiveness and that none of the parties even contemplated that the prosecutor had removed either Buckner or Bassham because they were women. Of the six peremptory challenges allotted to the prosecutor, he passed on two, used two to remove Buckner and Bassham, and used two to remove male jurors. The jury ultimately seated was comprised of nine women and three men. *See United States v. Williamson*, 53 F.3d 1500, 1510 (10th Cir. 1995) ("[A]lthough the mere presence of members of a certain race on the final jury does not automatically negate a *Batson* violation, . . . it can be a relevant factor, particularly when the prosecution had the opportunity to strike them.").

These factors culled from the transcript dedicated to the *Batson* issue indicate that the district court did not commit plain error in allowing the prosecutor to use peremptory challenges to remove Buckner and Bassham. Even assuming the record supported Evans' assertion that the prosecutor's decision to strike Bassham and Buckner was motivated in some small part by their sex, a generous assumption indeed, this court would still conclude under the facts of this

case that any such assumed error did not seriously affect the fairness, integrity, or public reputation of the trial, particularly where three-quarters of the members of the seated jury were women.

3. U.S.S.G. § 3B1.2 ADJUSTMENT FOR ROLE IN THE OFFENSE

Johnson contends the district court erred in denying her a § 3B1.2 two-level downward adjustment in her offense level on the grounds that she was merely a minor participant in the criminal activity surrounding the crack cocaine conspiracy. This court reviews the district court's factual findings, including its ultimate finding that Johnson was more than a minor participant, for clear error, and its exercise of discretion in applying the Sentencing Guidelines to those facts with "due deference." *See United States v. Onheiber*, 173 F.3d 1254, 1258 (10th Cir. 1999); *United States v. James*, 157 F.3d 1218, 1219 (10th Cir.1998). Johnson bore the burden of proving by a preponderance of the evidence to the district court that she was entitled to the § 3B1.2 reduction. *See Onheiber*, 173 F.3d at 1258; *United States v. Lockhart*, 37 F.3d 1451, 1455 (10th Cir. 1994).

Johnson's challenge to the district court's refusal to grant her a § 3B1.2 adjustment fails on two grounds. First, Johnson utterly fails to show that the district court clearly erred in concluding that she was not a minor participant. In rejecting Johnson's request for a § 3B1.2 adjustment, the district court undertook a lengthy and detailed analysis of the testimony both at trial and at a consolidated-

drug-amounts hearing. As noted by the district court, several of those witnesses testified regarding Johnson's substantial involvement in the conspiracy, particularly her role in facilitating the purchase and transportation of large quantities of crack cocaine by Junior Lane, Johnson's live-in boyfriend. On appeal, Johnson does not directly address the testimony cited by the district court. Instead, she simply identifies the testimony of other co-conspirators identifying Johnson as a minor participant.

A district court's finding of fact is clearly erroneous only "if it is without factual support in the record or if [this court], after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (quotation omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). A review of the record in this case, particularly the statements or testimony of Dennis Reed, Kore Winston, and Kelvin Bagby, demonstrates that the district court's conclusion regarding Johnson's role in the offense is amply supported by substantial evidence.

As noted by the government, Johnson is not entitled to the § 3B1.2 adjustment for another reason. In calculating the appropriate base offense level, Johnson was not held accountable for the relevant conduct of the entire conspiracy. Instead, the district court only considered those quantities of crack that Johnson personally distributed or jointly possessed with Junior Lane. Under these circumstances, this court has specifically held a § 3B1.2 reduction is not warranted. *See United States v. James*, 157 F.3d 1218, 1220 (10th Cir. 1998) ("Therefore, we join the majority of circuits that have addressed this issue and hold that when the relevant conduct of the larger conspiracy is not taken into account in establishing a defendant's base offense level, a reduction pursuant to U.S.S.G. § 3B1.2 is not warranted.").

## III. CONCLUSION

The judgments of conviction and sentences in these cases are hereby **AFFIRMED**.

ENTERED FOR THE COURT:

Michael R. Murphy
Circuit Judge

-13-