**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 15 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

HARRY DAVID WILLIAMS,

  Defendant-Appellant.

No. 00-6395

(W. D. Oklahoma)

(D.C. No. CR-99-42-T)

**ORDER AND JUDGMENT** *

Before **HENRY** , **McKAY** , and **GIBSON** ,** Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

---

 * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

 ** The Honorable John R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

Harry David Williams was convicted after a jury trial of conspiring to manufacture methamphetamine with the intent to distribute (a violation of 21 U.S.C. § 846) and maintaining a place for the purpose of manufacturing, distributing, and using methamphetamine (a violation of 21 U.S.C. § 856). The district court sentenced Mr. Williams to concurrent terms of imprisonment of 360 and 240 months, followed by six and three year terms of supervised release.[1]

On appeal, Mr. Williams challenges the sufficiency of the evidence supporting both convictions. He also argues that the district court should have reduced his offense level under section 3B1.2 of the United States Sentencing Guidelines (USSG) because he played a minor or minimal role in the offense. Finally, Mr. Williams advances an argument based upon Apprendi v. New Jersey, 530 U.S. 466 (2000), maintaining that his conspiracy conviction should be reversed because the amount of drugs involved in the conspiracy was not specified in the indictment.

The gist of Mr. Williams' challenges to the sufficiency of the evidence and to the district court's application of USSG § 3B1.1 is that he played a minor role in the offenses, performing various menial tasks for one of the leaders of the conspiracy in exchange for methamphetamine. For the reasons set forth below, we are not persuaded by Mr. Williams' arguments. Moreover, as Mr. Williams

_____

[1] The supervised release terms also ran concurrently.

acknowledges, the district court's application of <u>Apprendi</u> comports with circuit precedent.  Accordingly, we affirm Mr. Williams' convictions and sentences.

## I.  BACKGROUND

Because the parties are familiar with the relevant facts, we summarize them only briefly, viewing the record in the light most favorable to the government. <u>See</u> <u>United States v. Wilson</u>, 107 F.3d 774, 778 (10th Cir. 1997).  Between December 1995 and October 1997, Loy Chris Stevens and Ewing Vise manufactured and distributed methamphetamine in the Oklahoma City area.  Mr. Stevens and Mr. Vise typically completed two 'cooks' per month, which yielded from two ounces to two pounds of methamphetamine.  The principal manufacturing sites were the two men's residences in the southwest part of Oklahoma City.

Methamphetamine was produced at an outbuilding behind Mr. Stevens' residence that witnesses called the "bunkhouse."  Witnesses described this building as a small shed-like structure furnished with a day bed, television, chair, desk, and air conditioning.  Mr. Williams lived in the bunkhouse during the period of the charged conspiracy.

The government's witnesses explained how the bunkhouse was used for the

conspiracy's operations. Customers interested in purchasing methamphetamine would approach from the front of Mr. Stevens' property, through Mr. Stevens' residence, or through an alley and a gate in back of the residence. Customer traffic in and out of the bunkhouse area was constant, day and night. As many as twenty-five people per day purchased methamphetamine there.

The government's evidence also indicated that Mr. Williams performed a variety of tasks related to the methamphetamine distribution scheme. First, he cleaned up the bunkhouse after it was used to manufacture methamphetamine. Second, when methamphetamine was produced at the bunkhouse, Mr. Williams served as a lookout. Third, at the direction of Mr. Stevens, Mr. Williams obtained chemicals and ephedrine pills necessary in the manufacture of methamphetamine. Fourth, Mr. Williams took glassware from the bunkhouse to Mr. Stevens residence for cleaning. Finally, on several occasions, Mr. Williams distributed and sold methamphetamine at Mr. Stevens' direction. In exchange for these services, Mr. Williams received methamphetamine and a place to stay.

## II. DISCUSSION

### A. Sufficiency of Evidence Regarding Conspiracy Charge

Mr. Williams first argues that the evidence is insufficient to support his conviction for conspiring to distribute methamphetamine in violation of 21 U.S.C.

§ 846. In order to convict Mr. Williams of this conspiracy charge, the government was required to prove the following elements beyond a reasonable doubt: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997). Mr. Williams focuses his challenge on the fourth element, arguing that, in light of his relatively minor role in the methamphetamine distribution scheme, the government failed to demonstrate the necessary interdependence between his activities and those of the other conspirators.

We examine the sufficiency of the evidence de novo. See Wilson, 107 F.3d at 778. Evidence is sufficient to support a conviction if the record, viewed in the light most favorable to the government, would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. See id.

As Mr. Williams has observed, this circuit's decisions have explained the element at issue here—the interdependence between conspirators—in varying terms. Some decisions state that "[i]nterdependence exists where each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal." Carter, 130 F.3d at 1440. Other decisions employ arguably broader language: "[I]f the activities of a defendant charged

with conspiracy facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole, evidence of interdependence is present." United States v. Horn, 946 F.2d 738, 740-41 (10th Cir. 1991).

Mr. Williams frames his argument around the "essential-and-integral-steps-toward-a-common-goal" definition. In particular, he maintains that he did not share a common goal with the leaders of the conspiracy. According to Mr. Williams, his goal in performing the various acts surrounding the methamphetamine distribution scheme was merely to obtain drugs for his personal use. In contrast, the goal of the charged conspiracy was to manufacture and distribute methamphetamine for the purpose of making a profit.

To show this lack of a common purpose, Mr. Williams points to a wide range of evidence. He notes that he did not share in the profits of the operation and did not manufacture methamphetamine himself. Also, Mr. Williams was not involved in gun purchases and did not carry firearms. On several occasions when the police came to Mr. Stevens' house, Mr. Williams did not serve as a lookout. On one occasion when Mr. Stevens was arrested with laboratory materials in his truck, Mr. Williams was not present. Finally, Mr. Williams played no role in an attempted escape from jail by Mr. Stevens after Mr. Stevens' arrest.

Mr. Williams also cites cases involving individuals who have merely purchased drugs. For example, he notes that in United States v. Evans, 970 F.2d

663 (10th Cir. 1992), this circuit reversed a conviction of a defendant who was convicted of conspiracy to distribute cocaine based on the fact that she made a purchase from one of the major figures in the operation, lent scales to two members of the conspiracy with the knowledge that they would use the scales to weigh cocaine, and purchased a small amount of cocaine from two other individuals. We stated that "a consumer generally does not share the distribution objective and thus would not be part of the conspiracy to distribute cocaine." Evans, 970 F.2d at 669. (emphasis omitted).

Under our standard of review, we cannot accept Mr. Williams' argument. As the government and the district court have observed, the prosecution presented evidence from which a rational juror could conclude that Mr. Williams' role in the conspiracy was more extensive than that of an individual who merely purchased drugs. A number of witnesses testified that, for an extended period of time, Mr. Williams assisted in numerous operations of the conspiracy (e.g., cleaning up the bunkhouse, serving as a lookout, obtaining chemicals and ephedrine pills necessary in the manufacture of methamphetamine, cleaning glassware, and distributing and selling methamphetamine at Mr. Stevens' direction on several occasions).

Moreover, even if all of these activities arose out of Mr. Williams' need to satisfy his drug habit, that fact is not necessarily inconsistent with his sharing the

goals of the conspiracy. The cases on which Mr. Williams relies do not preclude a jury finding that Mr. Williams had more than one goal: satisfying his drug habit <u>and</u> doing so by undertaking the variety of tasks that Mr. Stevens asked him to do. <u>See</u> <u>United States v. Heckard</u>, 238 F.3d at 1222, 1230 (10th Cir. 2001) (concluding that the evidence supporting a conspiracy conviction was sufficient because the defendant's actions "benefitted <u>not only himself</u>, but also [other members of the conspiracy]") (emphasis added).

The variety of tasks that Mr. Williams performed distinguishes this case from those exonerating consumers of illegal drugs from conspiracy charges. <u>See, e.g</u>, <u>United States v. Dekle</u>, 165 F.3d 826, 829-30 (11th Cir. 1999); <u>United States v. Brown</u>, 872 F.2d 385, 390-91 (11th Cir. 1989). For example, in <u>Brown</u>, the Eleventh Circuit reversed a conspiracy conviction of a defendant who had consumed drugs, noting that "there was no evidence that the defendant turned around and sold this cocaine <u>or performed any errands or collections for his supplier or otherwise assisted the ongoing 'business</u>.'" <u>Dekle</u>, 165 F.3d at 830 (discussing <u>Brown</u>, 872 F.2d at 390) (emphasis added). Here, the government did produce such evidence.

We therefore conclude that the evidence is sufficient to support a jury finding that Mr. Williams' activities were "essential and integral steps toward the realization of [the] common, illicit goal" of distributing methamphetamine,

Carter, 130 F.3d at 1440, and that Mr. Williams' activities "facilitated the venture as a whole." Heckard, 238 F.3d at 1230 (10th Cir. 2001). Thus, the evidence is sufficient to support his § 846 conspiracy conviction.

### B. Sufficiency of Evidence Regarding Violation of 21 U.S.C. § 856

Mr. Williams also challenges the sufficiency of the evidence supporting his conviction for violating 21 U.S.C. § 856 for knowingly maintaining a place for the purpose of manufacturing, distributing, and using methamphetamine. In order to establish a § 856 violation, the government was required to prove the following elements beyond a reasonable doubt: (1) that the defendant knowingly (2) opened or maintained a place (3) for the purpose of manufacturing by repackaging, distributing, or using a controlled substance. See United States v. Green, 175 F.3d 822, 832 (10th Cir. 1999). Here, Mr. Williams' challenge pertains to the second element.

Tenth Circuit decisions have provided some explication of the "open or maintain" requirement. In order to "maintain" a place, the defendant must have had a "substantial connection" to it. United States v. Verners, 53 F.3d 291, 295-96 (10th Cir. 1995). "Where the defendant lives in the [place] this element is normally easily proved." Id. at 296. In other instances, a court may look to

matters such as "control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying the food to those at the site, and continuity." Id. (quoting United States v. Clavis, 956 F.2d 1079, 1091 (11th Cir. 1992)).

Applying these decisions, Mr. Williams points to several factors arguably demonstrating his lack of control over the bunkhouse. In light of these factors, he maintains that the government failed to prove that he "maintained" the structure by having a "substantial connection" to it.

In particular, Mr. Williams observes that the bunkhouse was located on Mr. Stevens' property and that he did not pay rent. He notes that he was often observed outside the bunkhouse rather than inside it. According to Mr. Williams, the evidence does not establish that he lived at the bunkhouse on a regular basis. Thus, he was "merely a person who hung around [Mr.] Stevens' property, who did errands not to maintain a methamphetamine manufacturing site, but simply to use drugs." Aplt's Br. at 27.

Nevertheless, as the government observes, the jury also heard evidence supporting the contention that Mr. Williams was more than a casual visitor to the bunkhouse. Some witnesses testified that Mr. Williams resided there on an extended basis, stating that he lived there "for a long time [, y]ears, off and on," Rec. vol. XI, at 2181, and that he was "one of the persons that was always there

to do anything and everything." Rec. vol. VI, at 919. Most significantly, on several occasions Mr. Williams met individuals in the bunkhouse and completed methamphetamine sales there on Mr. Stevens' behalf. Sometimes, Mr. Williams acted as a crowd control manager, disbursing groups of customers who loitered around the bunkhouse. Mr. Williams also cleaned up various items that suggested that illegal activity had taken place there (e.g., used needles, spoons, glassware, and coffee filters).

Viewed in the light most favorable to the government, this evidence is sufficient for a rational jury to conclude that Mr. Williams had a substantial connection to the bunkhouse and therefore maintained it. We therefore conclude that the evidence is sufficient to support Mr. Williams' conviction for violating 21 U.S.C. § 856.[2]

## C. Refusal to Reduce Offense Level Under USSG § 3B1.2

Mr. Williams argues that the district court erred in denying his request for a reduction in the offense level under USSG § 3B1.2. That section of the Guidelines allows a four-level reduction if the defendant was a "minimal"

---

[2] As the government also notes, count five of the superseding indictment also charged Mr. Williams with aiding and abetting in the violation of 21 U.S.C. § 856. The evidence presented by the government at trial is also sufficient to support a jury finding that Mr. Williams aided and abetted in Mr. Stevens' knowingly maintaining a place for the purpose of manufacturing, distributing, and using methamphetamine in violation of § 856.

participant in the offense and a two-level reduction if the defendant was a

"minor" participant. The determination of a defendant's role in the offense is a

factual question, and we thus review the district court's decision for clear error.

See United States v. James, 157 F.3d 1218, 1219 (10th Cir. 1998). Mr. Williams

has the burden of proving by a preponderance of the evidence that he is entitled to

the § 3B1.2 reduction. See United States v. Onheiber, 173 F.3d 1254, 1258 (10th

Cir. 1999).

Circuit case law has refused to rule categorically that any particular kind of

role will always be entitled to a certain kind of reduction. For example, as to

drug couriers, the court has refused to adopt a per se rule that they are minor or

minimal participants. See United States v. Ballard, 16 F.3d 1110, 1115 (10th

Cir.1994).

Here, Mr. Williams' extended involvement in the conspiracy as a close

assistant to Mr. Stevens provides ample support for the district court's refusal to

reduce the offense level. Moreover, the district court provided a persuasive

explanation for its ruling:

> It is correct, as the probation officer has written and as the
> government has contended with regard to this issue, that
> Mr. Williams was, indeed, a very active participant in this
> conspiracy. . . .
> [The government witnesses] described the role in the
> offense that was detailed and fully knowledgeable . . . Mr.
> Williams was clearly described by those witnesses as a
> clean-up man, a man who was a lookout, who assisted in

distributions of methamphetamine when called upon, and helped in the manufacture, picked up chemicals and other materials that were necessary for the manufacture of methamphetamine, and did so at the direction of [the codefendant Mr.] Stevens, and was present and participating virtually every day for the period involved.

Rec. vol. XVII, at 2690-91 (District court's findings at sentencing, Sept. 1, 2000).

Although reasonable minds might disagree as to whether Mr. Williams' degree of involvement warranted a reduction under § 3B1.2, we are required to afford substantial deference to the district court's assessment. See USSG § 3B1.2, comment.n.3(c) (noting that the application of § 3B1.2 is "heavily dependent upon the facts of the particular case"); United States v. Donaldson, 915 F.2d 612, 615 (10th Cir. 1990) (stating that the question at issue in an appeal of a § 3B1.2 decision is whether the record "contains sufficient evidence that a reasonable judge could make that particular finding"). Upon review of the record, we conclude that the district court's findings regarding its refusal to reduce Mr. Williams' offense level are supported by evidence in the record and are not clearly erroneous. Thus, Mr. Williams is not entitled to relief under § 3B1.2.

### D. Apprendi Challenge

Mr. Williams argues that his conspiracy conviction should be reversed because the superseding indictment did not specify the amount of

methamphetamine involved in the offense. His argument is based on the Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Here, Mr. Williams was sentenced within the statutory range for individuals with prior felony convictions who commit an offense involving unspecified amounts of drugs. See 21 U.S.C. § 841(b)(1)(C) (providing that a defendant who manufactures, distributes, or possesses with intent to distribute a schedule I or II controlled substance shall be sentenced to a term of imprisonment of not more than twenty years, or more than thirty years if previously convicted of a drug offense). As a result, under circuit precedent applying Apprendi, reversal of his conviction is not warranted. See United States v. Thompson, 237 F.3d 1258, 1262 (10th Cir.) (concluding that reversal is not warranted under Apprendi if the defendant is sentence within the statutory range for offenses involving unspecified drug amounts), cert denied, 532 U.S. 982 (2001). Indeed, Mr. Williams concedes this point, see Aplt's Br. at 32 (stating that "[t]he district court's decision was in accord with this court's post-Apprendi rulings"), and he explains that he advances this argument for the purpose of preserving his right to seek Supreme Court review of this issue.

Accordingly, we conclude that the indictment's failure to specify an amount of methamphetamine involved in the conspiracy does not warrant reversal under Apprendi.

## V. CONCLUSION

For the reasons set forth above, we therefore AFFIRM Mr. Williams' convictions and sentences.

Entered for the Court,

Robert H. Henry
United States Circuit Judge