F I L E D
United States Court of Appeals
Tenth Circuit

MAR 4 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT STEWART SILCOCK,

Defendant - Appellant.

No. 01-1549
(D.C. No. 99-CR-61-N)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **ALDISERT**,[**] and **HOLLOWAY**, Circuit Judges.

Robert Stewart Silcock appeals to this court challenging his conviction for

conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)

and 846. Because there is sufficient evidence to support Silcock's conviction, we

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm. Silcock also

challenges his sentence, arguing that the district court erred in determining that he

was more than a minor participant in the conspiracy, and thus that he was not

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Ruggero J. Aldisert, Circuit Judge, United States Court of
Appeals for the Third Circuit, sitting by designation.

entitled to an offense level reduction. Because the district court's conclusion that Silcock played more than a minor role is not clearly erroneous, we also affirm his sentence.

## I.   BACKGROUND

Silcock was indicted with eighteen other defendants for a conspiracy to distribute methamphetamine in Ouray County, Colorado. Perry Wherley was the ringleader of this conspiracy, traveling from Colorado to California on the weekends to obtain methamphetamine for distribution. The defendant Silcock, a California resident, helped Wherley and others obtain methamphetamine for several months in 1998.

The conspiracy began in 1996 when Wherley and his aunt, Brenda Paul, started traveling to California every other weekend to purchase methamphetamine for approximately ten regular customers in Ouray County. Because of a falling out, Wherley eventually replaced Brenda Paul as his traveling companion with Michael Sullings. After Sullings was arrested, Wherley replaced him with a friend and customer, Eric Avril.

In April 1998, Wherley and Avril began traveling to California every few weeks to buy methamphetamine. On their first trip, they discovered that Wherley's previous methamphetamine supplier was no longer available. Avril,

however, knew of another supplier in California named "Roy." To locate Roy, Avril recommended that they contact Silcock, who was Avril's old family friend and a fellow methamphetamine user. Upon their arrival at Silcock's house, Silcock called Roy, who came to the house and sold methamphetamine to Wherley and Avril. Wherley and Avril left some of the purchased methamphetamine with Silcock for his personal use and returned to Colorado.

This pattern was repeated approximately every three weeks over the next four months. Wherley and Avril would drive to California to stay with Silcock. They would alert Silcock that they were en route, and Silcock would arrange a meeting with Roy or other methamphetamine dealers.

On each trip, Wherley and Avril purchased two to three ounces of methamphetamine, and on their final trip they purchased four ounces. The drug transactions occurred at Silcock's house, and Avril and Wherley always compensated Silcock with methamphetamine for his own use. Wherley and Avril did not know any other source for methamphetamine in California and depended on Silcock to initiate contact with Roy or other dealers.

After these trips to California ceased in July 1998, Avril continued to obtain methamphetamine through Silcock. In August 1998, Avril and some friends pooled approximately $1,200 to purchase methamphetamine through Silcock. One of the friends, Liz Light, sent the money to Silcock via Federal

Express. A few weeks later, federal agents intercepted a phone call between Wherley and Avril. Avril reported that he had just talked to "B in Cali" and "it's on its way." Shortly thereafter Light received a package of methamphetamine and delivered some to Avril. A second phone conversation was then intercepted, in which Avril told Wherley that "Bob took care of me," referring to this package of methamphetamine.

Finally, in October and November 1998, law enforcement recorded Avril, Silcock, and Wherley discussing suppliers and prices of methamphetamine in Ouray County. Silcock discussed the price per ounce of methamphetamine and indicated that his sources in California were dwindling.

On March 25, 1999, Silcock, Wherley, Avril, and sixteen others were indicted for conspiracy to possess with intent to distribute methamphetamine. At the close of the Government's case, Silcock moved for a judgment of acquittal. The motion was denied by the district court, and Silcock was thereafter convicted by the jury and sentenced to 51 months of imprisonment. At the sentencing hearing, Silcock requested a two-level reduction pursuant to Sentencing Guideline § 3B1.2 based on the minor role he played in the conspiracy. The district court denied this request.

## II.   SUFFICIENCY OF THE EVIDENCE

Silcock first argues that the evidence was insufficient to support his conspiracy conviction. Because we find that a reasonable jury could find sufficient evidence to convict, we affirm.

Silcock moved for a judgment of acquittal at the close of the Government's case. Typically, a defendant must renew this motion at the close of all of the evidence to obtain de novo review on appeal. United States v. Lopez, 576 F.2d 840, 842 (10th Cir. 1978). In this case, however, Silcock did not introduce any evidence after making his motion and thus did not need to renew his motion at the close of all of the evidence. Id. at 843.

Thus, we review de novo Silcock's claim that the evidence was insufficient to support the jury's verdict, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the government. United States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001). The evidence is sufficient if any reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

To prove a conspiracy in violation of 21 U.S.C. § 846, the evidence must establish: "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." United

States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997). Silcock argues that the Government's evidence was insufficient to prove: 1) that Silcock knew the <u>essential objectives</u> of the conspiracy and 2) that Silcock was <u>interdependent</u> with the other conspirators.

A.      <u>Essential Objectives of the Conspiracy</u>

Silcock first argues that the evidence was insufficient to show that he knew the essential objectives of the conspiracy. We find, however, that a reasonable jury could infer from the evidence that Silcock knew that Wherley and Avril were purchasing methamphetamine for distribution in Colorado.

Silcock knew that two methamphetamine users were driving from Colorado to California every few weeks to purchase methamphetamine. He hosted these two Colorado residents, one of whom was his long-time friend, overnight in his home as many as eight times in four months. He contacted their drug supplier each time and hosted the drug transaction in his house. In return, he was compensated with some of the purchased methamphetamine. Although there is no direct evidence that Silcock knew the specific amounts purchased by Wherley and Avril, the jury could infer from the foregoing facts that he knew they were purchasing distribution quantities.

Silcock argues that even if he had known the amount purchased, such knowledge would not establish an inference that Wherley and Avril were purchasing methamphetamine for distribution. He contends they were such heavy users that they could personally consume two to four ounces over the course of a few weeks. Wherley testified, however, that even for a heavy user such as himself, one ounce of methamphetamine could be shared among four or five people for a week, or sold to ten customers. Thus, a reasonable jury could infer that Silcock knew Wherley and Avril were not the exclusive consumers of the purchased methamphetamine.

This inference is bolstered by the fact that Silcock later mailed $1,200 of methamphetamine to Avril and his friends in Colorado. Silcock's later conversations with Avril and Wherley regarding the price of methamphetamine further indicate that Silcock knew that the drugs purchased by Wherley and Avril in California were intended for distribution in Colorado.

A defendant need not "know all the details or all the members of a conspiracy" to sustain a conspiracy conviction. United States v. Caro, 965 F.2d 1548, 1556 (10th Cir. 1992). The evidence here is sufficient to show that Silcock knew Wherley and Avril were purchasing methamphetamine for further distribution.

B.    Interdependence

Silcock next argues that the evidence was insufficient to show that he was interdependent with the other members of the conspiracy. "A defendant's activities are interdependent if they facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole." Heckard, 238 F.3d at 1230 (internal quotations and citations omitted).

The evidence shows that Avril, Wherley, and all of their customers were dependent on Silcock. Avril and Wherley initially contacted Silcock when they discovered they had no source for methamphetamine. They continued to call Silcock each and every time they went to California so that he could arrange their drug purchases, and they never failed to compensate him for his services. Silcock was likewise dependent on the distribution of the drugs in Colorado, because the funds raised therefrom facilitated further trips by Wherley and Avril, which resulted in greater compensation for Silcock. From these facts, any reasonable jury could infer that Silcock "facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole." Heckard, 238 F.3d at 1230 (quotations omitted).

Because the evidence and inferences therefrom support the jury's conclusion that Silcock knew the essential objectives of the conspiracy and that

his activities were interdependent with those of the other conspirators, we affirm his conviction.

## III.   MINOR ROLE

Silcock finally argues that he is entitled to a two-point reduction in his total offense level pursuant to Sentencing Guideline § 3B1.2 because of his minor role in the conspiracy.  Any defendant receiving a reduction under this section must have played "a part in committing the offense that makes him <u>substantially less culpable</u> than the average participant."  <u>U.S. Sentencing Guidelines Manual</u> § 3B1.2, cmt. 3(A) (2001) (emphasis added).  A defendant may be designated a minor participant when he is "less culpable than most other participants" but his "role could not be described as minimal."  <u>Id.</u> cmt. 5.

The decision to reduce a defendant's base offense level because of the role he played in the crime "involves a determination that is heavily dependent upon the facts of the particular case."  <u>U.S. Sentencing Guidelines Manual</u> § 3B1.2, cmt. 3(C) (2001).  The defendant must prove that he is entitled to the reduction by a preponderance of the evidence.  <u>United States v. Onheiber</u>, 173 F.3d 1254, 1258 (10th Cir. 1999).  As with any issue of fact, we review the district court's determination for clear error.  <u>Id.</u>

The district court denied Silcock's request for a reduction based on his role as a minor participant. It reasoned that Silcock knew that the transactions were happening, facilitated the transactions by contacting the supplier each time, and was compensated for these services. Thus, it found that Silcock's role was not substantially less culpable than Wherley's or Avril's.

This determination is not clearly erroneous. United States v. Santistevan, 39 F.3d 250, 253-54 (10th Cir. 1994) ("We will not disturb a district court's finding of fact unless it is without factual support in the record, or if after reviewing the evidence we are left with the definite and firm conviction that a mistake has been made.") (internal quotations and citations omitted). The court considered the facts and concluded that Silcock was instrumental to each of the drug transactions. Although Silcock was not an actual supplier or distributor of the drugs, "[a] defendant is not entitled to a reduction under 3B1.2 simply because he is the least culpable among several participants in a jointly undertaken criminal enterprise." United States v. Lockhart, 37 F.3d 1451, 1455 (10th Cir. 1994) (emphasis added). He must be substantially less culpable than the average participant. U.S. Sentencing Guidelines Manual § 3B1.2, cmt. 3(A) (2001).

Our cases support the district court's conclusion that Silcock's culpability was not sufficiently minimal to support an offense level reduction. In Lockhart, this court upheld the district court's refusal to grant the defendant a reduction for

being a minor participant. 37 F.3d at 1455. In that case, the defendant had driven a cocaine purchaser to a McDonald's to buy cocaine. Id. at 1453. The evidence showed that the defendant knew why he was driving the purchaser to the McDonald's and that he expected some payment from the transaction. Id. at 1455. These facts were sufficient to establish that he was not a minor participant in the crime, as compared with the cocaine purchaser and the cocaine seller. Id.; accord Onheiber, 173 F.3d at 1258 ("[A] defendant is not necessarily entitled to a sentence reduction under § 3B1.2 solely because he can show that he was a middleman.") (citing United States v. Donaldson, 915 F.2d 612, 615 (10th Cir. 1990)); Santistevan, 39 F.3d at 254 ("Moreover, even if we accepted Mr. Santistevan's argument that he was only a 'middle man' who simply facilitated drug sales from Medina to third parties, our precedents uniformly reject the argument that this fact alone compels the district court to exercise its discretion and grant a base offense level reduction under § 3B1.2."); United States v. Ballard, 16 F.3d 1110, 1115 (10th Cir. 1994) ("[T]his court has refused to adopt a per se rule that couriers are minor or minimal participants."); United States v. Garcia, 987 F.2d 1459, 1461 (10th Cir. 1993) (affirming the denial of a reduction for a defendant who asserted he was just a "go-between" who received and filled orders for marijuana from his source).

Because Silcock's role in these transactions equals or exceeds those described in our previous cases, we cannot find that the district court's conclusion that Silcock played more than a minor role in the conspiracy is clearly erroneous and we affirm the sentence.

For the foregoing reasons, Silcock's conviction and sentence are affirmed.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge